SECOND DIVISION

June 18, 2002

No. 1-01-2030

WILLIAM T. DIVANE, JR., MICHAEL J. CADDIGAN, I. STEVEN DIAMOND, SAMUEL EVANS, MICHAEL FITZGERALD, THOMAS C. HALPERIN, DAVID A. HARDT, DANIEL MEYER, RICHARD SIPPLE, and MICHAEL R. WALSDORF, as the Electrical Insurance Trustees, 

Plaintiffs-Appellants,

v.

DALE W. SMITH, d/b/a DOVER DISTRIBUTING CO./DOVER TELECOMMUNICATIONS CO., FRIEDLER CONSTRUCTION CO., and BOARD OF EDUCATION OF THE CITY OF CHICAGO, 

Defendants-Appellees. 

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Cyril J. Watson, 

Judge Presiding.

PRESIDING JUSTICE BURKE delivered the opinion of the court:

Plaintiffs William Divane, Jr., Michael Caddigan, I. Steven Diamond, Samuel Evans, Michael Fitzgerald, Thomas Halperin, David Hardt, Daniel Meyer, Richard Sipple, and Michael Walsdorf, as the Electrical Insurance Trustees (Trustees), appeal from two orders of the circuit court granting the motions of defendants Friedler Construction Co. (Friedler) and Board of Education of the City of Chicago (Board) to dismiss the Trustees' complaint and first amended complaint, which alleged a claim under section 23(b) of the Mechanics Lien Act (Act) (770 ILCS 60/23(b) (West 1998)), and a breach of contract claim, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 1998)).
(footnote: 1)  On appeal, the Trustees contend that the notice submitted to the Board pursuant to section 23(b) of the Act (770 ILCS 60/23(b) (West 1998)) satisfied the requirements of that section and was not deficient for failing to include the specific amount of their lien on Friedler's (the general contractor) project funds.  In addition, the Trustees contend that the notice provided to the Board pursuant to section 23(b) of the Act satisfied the requirements for notice under their breach of contract claim.  For the reasons set forth below, we affirm in part, reverse in part, and remand this cause for further proceedings. 

STATEMENT OF FACTS

Plaintiffs are trustees for a certain fringe benefits fund pursuant to an agreement entered into on June 24, 1930, between the Electrical Contractors' Association of the City of Chicago (Association) and Local 134, International Brotherhood of Electrical Workers (Local 134).  The Board contracted with Friedler to perform renovation work at Robeson High School and Harlan High School.  Friedler, in turn, contracted with Dale Smith to perform the electrical work.  In this regard, Smith signed a "Letter of Assent," agreeing to be bound by the terms of a collective bargaining agreement entered into between the Association and Local 134.  Under this agreement, Smith was required to pay certain wage rates to his employees, to file monthly reports with the Trustees, and to make monthly contributions to the Trustees for certain fringe benefits.  Although Smith submitted weekly certified payroll reports to the Board, showing the total hours worked by each employee and the rate of pay, Smith failed to submit the monthly reports and contributions to the Trustees.

Because Smith failed to file monthly reports with the Trustees, they were not aware of his work until many months later.  However, once the Trustees learned of Smith's work, they sought an audit of his records.  After Smith refused to have his records audited, the Trustees filed a lawsuit in the federal district court and the court ordered an audit of Smith's books.  Based on this audit, the Trustees discovered that Smith owed them approximately $125,000 in contributions.  On September 29, 2000, the Trustees served notice of their lien on Friedler's project funds on the Board pursuant to section 23(b) of the Act.  On October 10, the Board acknowledged receipt of the notice and stated that it had directed its controller to withhold project funds due Friedler in an amount sufficient to satisfy the lien.  However, approximately two weeks later, the Board reversed its position and stated that it would not withhold the funds.

On December 28, the Trustees filed a two-count complaint.  Count I sought an accounting and an order directing the Board to remit the funds due the Trustees.  Count II alleged a breach of contract claim based on a "Multi-Project Labor Agreement" (Labor Agreement), which was executed by the Board with Local 134, 
inter alia
, and required the Board to withhold any disputed funds.  The Trustees alleged that the Board failed to comply with the requirements of the Labor Agreement by failing to withhold the disputed funds from Friedler.

On January 29, 2001, the Board filed a motion to dismiss the Trustees' complaint.  With respect to count I, the Board contended that the Trustees lacked standing to bring a claim under the Act and, additionally, that the notice served upon it was deficient pursuant to section 23(b) of the Act because it failed to state the amount of the lien.  With respect to count II, the Board contended that the Trustees failed to provide any notice of a lien on Friedler's project funds as required by the Labor Agreement.  Alternatively, the Board maintained that if the notice pursuant to section 23(b) could be construed to be notice under the Labor Agreement, the notice was nonetheless insufficient because it failed to set forth the amount of the lien.  Friedler later joined and adopted the Board's motion to dismiss.

On May 8, the trial court granted the motions to dismiss.  While the court concluded that the Trustees had standing, pursuant to section 9(a) of the Labor Agreement, it found, however, that the Trustees' section 23(b) notice to the Board was deficient, stating:

"[T]he clear and obvious requirement--if not the specific language--of Section 23(b) directs the claimant to state a specific amount due.  In the absence of such a specific amount, the clerk does not know how much money to withhold."

With respect to count II, the court concluded that the notice was defective for the same reason; it failed to set forth an amount that would satisfy the claim.  On May 21, the Trustees moved to modify the May 8 order and sought leave to file an amended complaint.  On May 30, the trial court entered a second order in which it granted the Trustees leave to file an amended complaint, stated that the Board and Friedler had adopted their previous motions to dismiss, reaffirmed its May 8 order, and dismissed the Trustees' amended complaint.  The order further provided that there was no just reason to delay enforcement or appeal.  This appeal followed.

ANALYSIS

A motion to dismiss pursuant to section 2-615 of the Code tests the legal sufficiency of the plaintiff's complaint.
  Lykowski v. Bergman,
 299 Ill. App. 3d 157, 162, 700 N.E.2d 1064 (1998).  "In determining the legal sufficiency of a complaint, all well-pleaded facts are taken as being true and all reasonable inferences from those facts are drawn in favor of the plaintiff."
  Lykowski,
 299 Ill. App. 3d at 162.  "The question on appeal from the granting of a section 2-615 motion is whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted."
  Lykowski,
 299 Ill. App. 3d at 162-63.  We review the trial court's decision
 de novo.  Lykowski,
 299 Ill. App. 3d at 162. 

 This case requires us to construe a statute, which involves a question of law subject to 
de novo
 review.  
In re Estate of Andernovics
, 197 Ill. 2d 500, 507, 759 N.E.2d 501 (2001).  "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature."  
People ex rel. Ryan v. McFalls
, 313 Ill. App. 3d 223, 226, 728 N.E.2d 1152 (2000).  The first step in doing so requires an examination of the language of the statute in which we give the words their plain meaning and construe them in context.  
In re Tax Deed
, 311 Ill. App. 3d 440, 443, 723 N.E.2d 1186 (2000).  We "must construe the statute as written and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute."  
In re Tax Deed
, 311 Ill. App. 3d at 444; see also 
In re County Treasurer and Ex-Officio Collector of Cook County
, 323 Ill. App. 3d 1044, 1049, 753 N.E.2d 363 (2001)
.  
Additionally, "[i]f possible, courts must give effect to every word, clause, and sentence and may not read a statute so as to render any part inoperative, superfluous, or insignificant."  
Newland v. Budget Rent-A-Car Systems, Inc.
, 319 Ill. App. 3d 453, 456, 744 N.E.2d 902 (2001).  "Legislative intent as to the meaning of words can be ascertained from the history of the legislation or from the use of the term in other sections of the same or other Illinois statutes."  
In re Tax Deed
, 311 Ill. App. 3d at 444.  See also 
In re County Treasurer and Ex-Officio Collector of Cook County
, 323 Ill. App. 3d at 1048.  "One may presume that the legislature, when drafting the language of the section, was aware of the construction and use of [a] term in another section."  
In re Tax Deed
, 311 Ill. App. 3d at 444.  Accordingly, where the legislature uses certain words in one instance and different words in another, it intends different results.  
Ryan
, 313 Ill. App. 3d at 227.  The same general principles apply in interpreting contract provisions.  

I.  Section 23(b) Notice

The Trustees first contend that the trial court erred in concluding that notice under section 23(b) of the Act required the Trustees to set forth the specific amount of their lien.  According to the Trustees, unlike other provisions of the Act, in particular section 7 and 23(c), section 23(b) does not require that the notice set forth the claimed amount.  The Trustees maintain that the trial court, contrary to its authority, added requirements to the statute that were not present.  Additionally, the Trustees rely on other Illinois statutes to support their contention that section 23(b) does not require the notice to state the amount of their claim because, in these other statutes, the legislature specifically stated that the lien notice shall set forth the amount of the claim.  The Trustees also argue that the Board would be able to calculate the amount to be withheld because it had Smith's certified payroll records.  The Trustees further maintain that they did not possess the necessary information to set forth the exact amount of their claim because Smith failed to comply with the collective bargaining agreement by failing to submit monthly reports to the Trustees.  Lastly, and alternatively, the Trustees argue that only substantial compliance with the requirements of the Act are required.  

The Board and Friedler contend that the Trustees were required to strictly comply with the notice provision of section 23(b) of the Act.  According to the Board and Friedler, the only fair reading of the statute requires that the notice state the claimed amount.  In addition, the Board and Friedler maintain that common sense dictates that if the Board is not notified of the amount of a claim, it has no basis upon which to determine the amount of the lien.  In response to the Trustees' argument that the Board would be able to ascertain the amount, the Board and Friedler maintain that this argument is not supported by the statutory language of section 23(b), nor case law.  In addition, they argue that because the purpose of the statute is to protect public entities, it is the claimant's obligation, here the Trustees, to comply with the statute and, therefore, the Trustees' argument has no merit.  The Board and Friedler further argue that to impose a duty upon the Board to ascertain the amount of the claimed lien would be absurd.  Lastly, the Board and Friedler maintain that a comparison of the language in section 23(b) with the language in other Illinois statutes regarding different types of liens is irrelevant and contrary to the principles of statutory construction.
(footnote: 2)
 Initially, we must address the issue of the Trustees' standing.  The Trustees rely on 
United States for Benefit and on Behalf of Sherman, et al., Trustees v. Carter
, 353 U.S. 210, 1 L. Ed. 2d 776, 77 S. Ct. 793 (1957), in support of their argument that they had standing to bring an action under the Act.  In 
Sherman
, the trustees of a benefit fund sued the surety on a contractor's payment bond when the contractor failed to make required contributions to the fund.  
Sherman
, 353 U.S. at 212-13, 1 L. Ed. 2d at 780, 77 S. Ct. at 795.  The contractor had contracted with the United States government to construct buildings and employed laborers, under certain labor agreements/collective bargaining agreements, which required the contractor to pay certain specified wages to the laborers and to contribute to the benefit fund.  
Sherman
, 353 U.S. at 213, 1 L. Ed. 2d at 780, 77 S. Ct. at 795.  When the contractor failed to make the necessary contributions, the trustees sued the contractor and its surety under section 2(b) of the Miller Act (40 U.S.C. §270(b) (1934)).  
Sherman
, 353 U.S. at 213, 1 L. Ed. 2d at 780, 77 S. Ct. at 795.  The district court granted the surety's motion for summary judgment.  
Sherman
, 353 U.S. at 215, 1 L. Ed. 2d at 781, 77 S. Ct. at 796.  The court of appeals affirmed, holding that the trustees did not have a right to sue on the bond because they were "neither persons who ha[d] furnished labor or material, nor [were] they seeking 'sums justly due' such persons."  
Sherman
, 353 U.S. at 215, 1 L. Ed. 2d at 781, 77 S. Ct. at 796.

The United States Supreme Court disagreed.  The 
Sherman
 Court first noted that section 1(a)(2) of the Miller Act required contractors to furnish payment bonds for the protection of all persons supplying labor under the contractor's contract. 
Sherman
, 353 U.S. at 216, 1 L. Ed. 2d at 782, 77 S. Ct. at 796
; 
40 U.S.C. §270(a)(2) (1934).  In addition, the 
Sherman
 Court stated that the Miller Act gave every person who supplied labor the right to sue on a payment bond.  
Sherman
, 353 U.S. at 216, 1 L. Ed. 2d at 782, 77 S. Ct. at 796; 40 U.S.C. §270b(a) (West 1934).  The 
Sherman
 Court also stated that the purpose of the Miller Act was to protect those whose labor went into public projects.  
Sherman
, 353 U.S. at 216, 1 L. Ed. 2d at 782, 77 S. Ct. at 796.  The 
Sherman
 Court then noted that the collective bargaining agreement, to which the contractor was bound, required him to pay laborers a certain rate and to contribute a certain amount to the benefit fund.  
Sherman
, 353 U.S. at 217, 1 L. Ed. 2d at 782-83, 77 S. Ct. at 797.  It was undisputed between the 
Sherman
 parties that if the contractor had failed to pay the laborers their wages, the surety would have been liable for the wages.  
Sherman
, 353 U.S. at 217, 1 L. Ed. 2d at 783, 77 S. Ct. at 797.  Although the surety argued that the benefit fund contributions should be treated differently, the 
Sherman
 Court rejected this argument, finding

"that contributions to the fund were part of the consideration [the contractor] agreed to pay for the services of laborers on his construction jobs.  The unpaid contributions were a part of the compensation for the work to be done by [the contractor's] employees.  The relation of the contributions to the work done is emphasized by the fact that their amount was measured by the exact number of hours each employee performed services for [the contractor].  Not until the required contributions have been made will [the contractor's] employees have been 'paid in full' for their labor in accordance with the collective-bargaining agreements."  
Sherman
, 353 U.S. at 217-18, 1 L. Ed. 2d at 783, 77 S. Ct. at 797.

With respect to the 
Sherman
 surety's argument that the trustees had not furnished labor, nor were they seeking "sums justly due" the laborers, the 
Sherman
 Court, relying on cases under the repealed Heard Act (Act of August 13, 1894, 28 Stat. 278, as amended, 33 Stat. 811, 36 Stat. 1167) in which lawsuits by assignees of employees were allowed, stated:

"Such assignees were not the persons who had furnished the labor or material for which the claims were made.  They did not seek 'sums justly due' to persons who had themselves furnished labor or material ***.  Yet these cases established that assignees of the claims of persons furnishing labor or material came within the protection of the statutory bond.  It was pointed out that a denial of an assignee's right to sue on the bond might deprive those for whom the security was intended of a fair chance to realize upon their claims by assignment."  
Sherman
, 353 U.S. at 218-19, 1 L. Ed. 2d at 783-84, 77 S. Ct. at 798.

The 
Sherman
 Court then concluded:

"If the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so.  Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided.  Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment.  The master labor agreements not only created [the contractor's] obligation to make the specified contributions, but simultaneously created the right of the trustees to collect those contributions on behalf of the employees.  The trust agreement gave the trustees the exclusive right to enforce payment.  The trustees stand in the shoes of the employees and are entitled to enforce their rights."  
Sherman
, 353 U.S. at 219-20, 1 L. Ed. 2d at 784, 77 S. Ct. at 798.

Lastly, the 
Sherman
 Court concluded:

"The trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor.  The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers.  [As such], these contributions are in substance as much 'justly due' to the employees who have earned them as are the wages payable directly to them in cash."  
Sherman
, 353 U.S. at 220, 1 L. Ed. 2d at 784, 77 S. Ct. at 798.

Although 
Sherman
 involved a claim under a payment bond, we find it persuasive and its rationale applicable to the Act.  The Act provides:

"Any person who shall by contract *** with the owner of a lot or tract of land, or with one who the owner has authorized and knowingly permitted to contract, [who] furnish[es] or perform[s] labor *** is known under this Act as a contractor, and has a lien upon the *** lot or *** land *** for the amount due him for such *** services or labor."  770 ILCS 60/1 (West 1998).

The purpose of the Act is to protect those individuals who in good faith furnish material or labor for the construction of buildings.  
Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois, 
319 Ill. App. 3d 870, 877, 747 N.E.2d 410 (2001).  Clearly, this purpose is analogous to the purpose of the Miller Act.  Here, as in 
Sherman
, the collective bargaining agreement bound Smith to make contributions to the fringe benefit fund.  These contributions were part of the compensation for work performed by electricians under the Labor Agreement.  Also, as in 
Sherman
, the contributions were based on or measured by the number of hours each electrician worked.  Accordingly, under the Act, as in the bond situation presented in 
Sherman
, the electricians would be entitled to a lien against the owners for the fringe benefit contributions as a part of the amount due them for performance of their services.  Similarly, as in 
Sherman
, the collective bargaining agreement created Smith's obligation to make the contributions and simultaneously gave the Trustees the exclusive authority to collect the contributions and enforce payment by bringing legal proceedings to recover delinquent contributions.  Lastly, the Trustees are claiming recoveries for the sole benefit of the beneficiaries of the fringe benefit fund who are the very individuals who performed the labor for Smith.  Accordingly, we find that the Trustees, like those in 
Sherman
, stand in the electricians' shoes and are entitled to enforce their rights and, thus, have standing under the Act.

Substantively, section 23(b) of the Act states, in pertinent part:

"Any person who shall furnish *** labor to any contractor having a contract for public improvement for any *** school district, *** shall have a lien for the value thereof on the money, bonds, or warrants due or to become due the contractor having a contract with such *** school district ***.  Provided, such person shall, before payment or delivery thereof is made to such contractor, notify the clerk or secretary, as the case may be, of the *** school district *** of his claim by a written notice and furnish a copy of said notice at once to said contractor."  770 ILCS 60/23(b) (West 1998).

Clearly, the plain language does not require the notice to include the amount of the claim.  As the Trustees argue, this conclusion is buttressed by the fact that different language with respect to notice is used not only in the very next section, 23(c), but other parts of the Act, as well as other lien acts.  Specifically, section 23(c) states:

"Any person who shall furnish *** labor to any contractor having a contract for public improvement for the State, may have a lien for the value thereof on the money, bonds or warrants due or about to become due to the contractor ***, by giving to the Director or other official, whose duty it is to let such contract, written notice of his claim for lien containing a sworn statement of the claim showing with particularity the several items and the 
amount claimed
 to be due on each."   (Emphasis added.)  770 ILCS 60/23(c)` (West 1998).

See also 770 ILCS 60/24 (West 1998) ("written notice of his or her claim and the amount due or to become due"); 770 ILCS 15/10(h) (West 1998) (Real Estate Broker Liens Act: "The lien notice shall state *** the amount for which the lien is claimed ***"); 770 ILCS 45/2 (West 1998) (Labor & Storage Lien Act: "lien notice, which notice shall state *** the amount for which the lien is claimed"); 770 ILCS 105/3 (West 1998) (Tool & Die Lien Act: "Before enforcing such lien, an initial notice in writing shall be given to the customer ***.  This notice shall state that a lien is claimed in the amount therein set forth ***"); 815 ILCS 307/10-115(j) (West 1998) (Illinois Business Brokers Lien Act: "The lien notice shall state *** the amount for which the lien is claimed ***").  
Cf.
 770 ILCS 60/7 (West 1998) ("a claim for lien, verified by the affidavit of himself or herself, *** which shall consist of a brief statement of the contract, the balance due after allowing all credits ***"); 770 ILCS 60/25 (West 1998) ("a claim for lien verified by the affidavit of himself ***, which shall consist of *** the balance due after allowing all credits").  Based upon the fact that the legislature clearly has stated in numerous other lien statutory provisions, as in section 23(c), that the notice must include the amount claimed or the amount of the lien and it did not include such language in section 23(b), we must presume that the legislature intended a different type of notice.  Were we to interpret the notice requirement of section 23(b) as the trial court did, we would be annexing a new provision or adding new conditions that were not intended by the legislature based on the plain language it used.  Clearly, such an interpretation contradicts the well-settled rules of statutory construction.  While the trial court's rationale for its decision may be logical, the trial court nonetheless ignored the plain language of the statute.

Based on the foregoing, we find that section 23(b) of the Act does not require that the notice of a lien include the amount claimed or the amount of the lien.  Accordingly, we hold that the trial court erred in dismissing count I of the Trustees' amended complaint.

II.  Notice Under the Labor Agreement

The Trustees contend that, like section 23(b) of the Act, the  Labor Agreement does not require them to include the amount of their claim in their notice.  The Labor Agreement only provides for "proper" notice, which should depend on the circumstances of each particular case.  According to the Trustees, they did not know the amount Smith was obligated to contribute, and, as a result, the amount of their lien, since Smith failed to comply with the requirements of the collective bargaining agreement in submitting monthly reports to the Trustees.  Conversely, the Trustees argue that the Board possessed such information because Smith supplied it with weekly payroll reports.  The Trustees also maintain that if they were required to provide information that they do not possess, the protections afforded to them by the Labor Agreement would be illusory.

The Board
(footnote: 3) contends that the Trustees completely failed to give notice under the Labor Agreement.  According to the Board, the notice provided pursuant to section 23(b) of the Act does not mention the Labor Agreement.  The Board maintains that notice under one statute or instrument does not constitute notice under another statute or instrument.  Alternatively, the Board maintains that if the notice under section 23(b) can be construed as notice under the Labor Agreement, the notice was nonetheless insufficient because it failed to set forth the amount of the claimed lien.  

The Trustees counter that their notice under section 23(b) did reference the Labor Agreement and that notice under section 23(b) can also constitute notice under the Labor Agreement.

Paragraph 9(a) of the Labor Agreement provides:

"In the event a dispute shall arise between any contractor or subcontractor *** and *** fringe benefit fund established under the appropriate collective bargaining agreement as to the obligation and/or payment of fringe benefits provided under the collective bargaining agreement, upon proper notice to the contractors and/or subcontractors by the appropriate *** fringe benefit fund and to the Board, an amount sufficient to satisfy the amount claimed shall be withheld from the contractor's or subcontractor's regularly scheduled periodic payment from the Board or its agents until such time as said claim is resolved."

Initially, we note that the notice of lien served by the Trustees pursuant to section 23(b) of the Act, contrary to their contention, did not reference the Labor Agreement.  It did, however, reference the collective bargaining agreement.  Nonetheless, we believe that the notice under the Act would constitute notice under the Labor Agreement as well.  The Labor Agreement only requires notice that is "proper."  There is nothing more detailed in the Labor Agreement as to precisely what form the notice must take.  There is no indication that there must be a separate notice entitled, 
i.e.
, "Notice of Claim Under Labor Agreement," 
etc.
  Notice is "knowledge of facts *** [but] does not necessarily mean knowledge of all the facts."  Black's Law Dictionary 957 (5th ed. 1979).  It is "information intended to apprise a person of some proceeding in which his interests are involved, or informing him of some fact which it is his right to know."  Black's Law Dictionary at 957.  In this case, knowledge of a dispute with respect to fringe benefit contributions is the pertinent fact.  Clearly, the Trustees' notice under the Act apprised the Board of this information.

Moreover, "proper" is defined as "adequate to the purpose."  Webster's Third New International Dictionary 1817 (1993).  "Proper" is also defined as "[t]hat which is fit, suitable, appropriate ***.  Reasonably sufficient."  Black's Law Dictionary at 1094.  "Sufficient" is defined as "[a]dequate, enough, as much as may be necessary."  Black's Law Dictionary at 1285.  "Reasonable notice," although a "relative" term, "is notice which is plainly calculated to apprise the appropriate person of its contents."  Black's Law Dictionary at 1138.  Here, the Trustees' notice provided to the Board pursuant to the Act was proper notice under the Labor Agreement.  It apprised the Board, 
inter alia
, of a dispute between the Trustees and Smith as to the payment, or lack of payment, of fringe benefits.  Thus, we find that the Board did in fact receive notice under the Labor Agreement.

If the Labor Agreement stated only that "proper notice" was required, we would find that the section 23(b) notice was sufficient under the Labor Agreement as well.  However, we conclude that although the section 23(b) notice met the requirements of the Act, it did not meet the requirements of the Labor Agreement.  The Labor Agreement provision requiring "proper notice" is followed by the phrase, "an amount sufficient to satisfy the amount claimed."  We believe that inclusion of this language indicates that the parties intended that the notice would include the amount of the claim.  To find otherwise would be to ignore this language and render it insignificant or inoperative.  Accordingly, we find that notice under the Labor Agreement was insufficient because no amount was stated and, therefore, that the trial court did not err in dismissing count II of the Trustees' amended complaint.

With respect to the Board's liability in light of the fact that we have found notice sufficient under the Act, but insufficient under the Labor Agreement, we find that the Board was still liable to withhold funds from the contractor.  The Act provides one basis for relief and the Labor Agreement provides a separate, but independent basis, for relief.  Each provide alternate remedies, neither of which negates the other.  Section 23(b) of the Act provides:

"It shall be the duty of such clerk or secretary, as the case may be, upon receipt of the 
first
 notice herein provided for to cause to be withheld a sufficient amount to pay such claim for the period limited for the filing of suit, unless otherwise notified by the person claiming the lien.  Upon expiration of this period the money *** so withheld shall be released for payment to the contractor, unless the person claiming the lien shall have instituted proceedings and delivered to the clerk or secretary, as the case may be, of the *** school district *** a copy of the complaint as herein provided, in which case, the amount claimed shall be withheld until the final adjudication of the suit is had."  (Emphasis added.)  770 ILCS 60/23(b) (West 1998).

Thus, under the Act, the Board was required to withhold monies payable to Friedler.  This duty was independent of any duty it was required to undertake under the Labor Agreement.  

CONCLUSION

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part; and remanded.

CAHILL and McBRIDE, JJ., concur.

FOOTNOTES
1:
Although defendant Dale Smith was apparently served, no appearance was filed on his behalf and there is no evidence as to his status in this lawsuit.

2:
This contention is entirely erroneous.  As stated above, the court, in construing a statute, clearly may look to other Illinois statutes.

3:
Although Friedler states in his brief that he adopts all of the arguments in the Board's brief, including the arguments with respect to this issue, the trial court dismissed this count against Friedler on the basis that the Trustees had failed to allege that Friedler was a party to the Labor Agreement and, therefore, had no right to recover from him.  The Trustees have not raised or objected to this ruling on appeal and, therefore, it is waived.  Accordingly, the discussion with respect to this issue is limited to the Board.