RICHARD L. GIRARD, Plaintiff-Appellee, v. JESSE WHITE, Secretary of State, State of Illinois, Defendant-Appellant.

First District (1st Division)    No. 1—03—3587

Opinion filed March 14, 2005.

12

Lisa Madigan, Attorney General, of Chicago (Gary Feinerman, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellant.

Larry A. Davis, of Larry A. Davis, Ltd., of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, Richard L. Girard, filed an application for an Illinois driver's license with defendant, the Secretary of State. The Secretary denied Girard's application based on the revocation of Girard's Florida driver's license for four driving under the influence (DUI) convictions. Girard sought administrative review in the circuit court, and the court ordered the Secretary to conduct a hearing to determine if Girard is entitled to a driver's license under section 6—704(2) of the Illinois Vehicle Code (Code) (625 ILCS 5/6—704(2) (West 1998)). Following this proceeding, the hearing officer classified Girard as a "high risk" alcoholic and held that Girard presented insufficient evidence to war-

rant his entitlement of the issuance of an Illinois driver's license. The hearing officer recommended the denial of Girard's petition for a driver's license, but found that he had shown that he was responsibly addressing his alcoholism and issued Girard an Illinois restricted driving permit (RDP) as a probationary device. Girard again sought review in the circuit court. The circuit court determined that the Secretary was without authority to issue a RDP to someone whose driver's license has not been suspended by the Secretary and reversed the hearing officer's finding that Girard was not entitled to full driving privileges.

The Secretary appealed, originally arguing that (1) the Code does not allow driving privileges to an applicant whose license was revoked by another state following four DUI convictions, and (2) even if Girard were permitted to apply for driving privileges, the Secretary has the authority to issue Girard a probationary RDP. Just before oral arguments, the Secretary advised this court that he was withdrawing his first argument. Girard, however, still contends that the Secretary has no authority to issue him a RDP, but must issue him a driver's license, as the circuit court found.

Girard was issued a Florida driver's license on February 15, 1988. Between 1988 and 1996, Girard was convicted of DUI four times. Following his September 1996 DUI conviction, Girard was sentenced to 24 months in the Florida Department of Corrections and his Florida driver's license was permanently revoked. Girard served 20 1/2 months of his sentence. Following his release in June 1998, Girard moved to Illinois.

Upon establishing his Illinois residency, Girard applied for an Illinois driver's license with the Secretary. The Secretary denied Girard's application because his Florida driver's license was revoked. In August 1999, Girard requested an administrative hearing on his application. Girard claimed that he was entitled to Illinois driving privileges pursuant to section 6—704(2) of the Code. The hearing officer denied Girard's petition and relied on sections 6—704(2) and 6—103(3) in his determination that Girard was not entitled to driving privileges. Plaintiff filed a complaint for administrative review in the circuit court. In August 2000, the circuit court remanded Girard's case to the Secretary and held that the Secretary has the authority to issue a driver's license to Girard if the Secretary deems it appropriate under section 6—704(2) of the Code.

In July 2001, the hearing officer issued her findings. In her findings, the hearing officer noted that Girard was administered the Mortimer-Filkins Test and was scored as a "problem drinker." Girard's alcoholism was classified as "high risk, dependent, in remis-

sion." The hearing officer went on to find that Girard had established an ongoing support system and was "working a good recovery program" through Alcoholics Anonymous (AA) meetings and his family. The hearing officer determined that Girard "provided insufficient evidence to warrant his entitlement of the issuance of an Illinois driver's license," but Girard "has carried his burden of proving that he is responsibly addressing his alcoholism, as he has completed treatment, maintained abstinence for a sufficient period of time, and is participating in a self-help or other appropriate program to support his continued abstinence." Although the hearing officer found Girard "provided insufficient evidence to warrant" a license and recommended the denial of Girard's petition for an Illinois driver's license, she nonetheless recommended the granting of the issuance of a RDP for employment purposes and to attend AA meetings because he was "responsibly addressing his alcoholism" and "could safely operate a motor vehicle." Girard filed a new complaint for administrative review in the circuit court. In October 2003, the circuit court reversed the Secretary's decision to deny full driving privileges to Girard and remanded to the Secretary to issue Girard a driver's license. The court found that the statutory language of section 6—704(2) "contrasts sharply with the discretion granted the Secretary when determining to restore driving privileges to an Illinois driver whose privileges were suspended or revoked. According to the circuit court, in such instances, the Secretary may issue a RDP to address undue hardship resulting from the continued revocation or suspension of a pre-existing license to drive in Illinois. As the new resident had no pre-existing privilege in this State, there is no hardship imposed as there is no right to a license to drive." The court went on to say that from a public safety and policy perspective, it would be advantageous to allow the Secretary the ability to issue probationary licenses to new residents, such as Girard, but the legislature has not granted such authority.

This appeal followed.

Even though the Secretary has withdrawn his argument that the Code does not permit driving privileges to applicants, like Girard, whose license has been revoked following four DUI convictions, we conclude that the threshold issue before us is whether Girard may make an application for a driver's license under Illinois law. For the reasons that follow, we find that he cannot.

■ Illinois is a party state to the Driver License Compact (Compact). The policy behind the Compact is to promote compliance with the laws, ordinances and administrative rules and regulations relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles. The

policy also seeks to make the reciprocal recognition of licenses to drive and eligibility more just and equitable by considering the overall compliance with motor vehicle laws, ordinances and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states. 625 ILCS 5/6—701(b) (West 2000). Section 6—704 of the Compact outlines the application procedures for new driver's licenses. Subsection 2 of section 6—704 provides as follows:

> "Upon application for a license to drive, the licensing authority in a party state shall ascertain whether the applicant has ever held, or is the holder of a license to drive issued by any other party state. The licensing authority in the state where application is made shall not issue a license to drive to the applicant if:
> ***
> 2. The applicant has held such a license, but the same has been revoked by reason, in whole or in part, of a violation and if such revocation has not terminated, except that after the expiration of one year from the date the license was revoked, such person may make application for a new license if permitted by law. The licensing authority may refuse to issue a license to any such applicant if, after investigation, the licensing authority determines that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways." 625 ILCS 5/6—704(2) (West 2000).

In order to decide the question of whether Girard can apply for an Illinois driver's license, we need to interpret what the language "if permitted by law" in section 6—704 means and what authority that language and section 6—704 grant the Secretary in the application process of new residents; specifically, a new resident whose license has been revoked in another state.

Section 6—704 is a discretionary grant of authority to provide relief to new residents by allowing the issuance of a driver's license when the application is consistent with relevant Illinois law. We interpret the phrase "if permitted by law" in section 6—704(2) to mean a license may be issued if such an application would be permitted under Illinois law and the Secretary determines that it will be safe to grant "such person the privilege of driving a motor vehicle on the public highways." 625 ILCS 5/6—704(2) (West 2000). We conclude Illinois law does not permit the application for or the issuance of a license to an applicant whose license or permit or privilege to drive upon the highway has been revoked because of four DUI convictions. 625 ILCS 5/6—208(b) (West 2000).

Section 6—208 outlines the procedure for application following a revocation and states, in relevant part:

"Any person whose license, permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license, permit or privilege renewed or restored. However, such person may, except as provided under subsection (d) of Section 6—205, make application for a license pursuant to Section 6—106 (i) if the revocation was for a cause which has been removed or (ii) as provided in the following subparagraphs:

\* \* \*

4. The person may not make application for a license if the person is convicted of committing a fourth or subsequent violation of Section 11—501 of this Code or a similar provision of a local ordinance, paragraph (b) of Section 11—401 of this Code, Section 9—3 of the Criminal Code of 1961, or a combination of these offenses or similar provisions of local ordinances or similar out-of-state offenses \*\*\*." 625 ILCS 5/6—208(b)(4) (West 2000).

Girard maintains that section 6—704(2) governs his application, and under section 6—704(2), the Secretary can deny an application if (1) Illinois law otherwise prohibits the issuance of such license, or (2) the Secretary determines after an investigation "that it will not be safe to grant to such person the privilege of driving a motor vehicle on the public highways." 625 ILCS 5/6—704(2) (West 2000). Girard claims that Illinois allows this application and since the hearing officer concluded he was a safe driver, he is therefore entitled to an Illinois driver's license. Girard further claims that section 6—208(b)(4) is not applicable to him for two reasons: section 6—208 does not apply to drivers whose privileges were not revoked under Illinois law and all of Girard's offenses occurred before the enactment of section 6—208(b)(4). Girard also asserts that section 6—103[1] does not apply in this case, but we find that consideration of section 6—103 is unnecessary because we conclude section 6—208 governs any applications after revocation, such as Girard's. As we discuss below, we also find Girard is "any person" whose "privilege to drive" has been revoked and comes within the confines of section 6—208.

█ Before that discussion, we note that Girard has failed to cite any authority for his assertion that section 6—208(b)(4) is inapplicable because Girard's DUI offenses occurred prior to its enactment. Supreme Court Rule 341(e)(7) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 177 Ill. 2d R. 341(e)(7). It is well settled that a contention supported by some argument but which does

---

[1]Section 6—103 is the general provision outlining the persons to whom the Secretary may not issue a driver's license.

not cite any authority does not satisfy the requirements of Supreme Court Rule 341(e)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff v. Dever*, 194 Ill. App. 3d 147, 155-56 (1990). Therefore, any claim in this regard is waived.

The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature. *People v. Maggette*, 195 Ill. 2d 336, 348 (2001). In determining the legislature's intent, a court should first consider the statutory language; this is the best means of determining the legislative intent. *Maggette*, 195 Ill. 2d at 348. A court must consider the entire statute and interpret each of its relevant parts together. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids. *Paris*, 179 Ill. 2d at 177.

Section 6—704, as well as being within the Compact, operates as part of the Code and does not create a right to a driver's license outside of the statutes detailing the Secretary's authority. Under the doctrine of *in pari materia*, two legislative acts that address the same subject are considered with reference to one another, so that they may be given harmonious effect. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002). The supreme court has held that sections of the same statute should also be considered *in pari materia* and that each section should be construed with every other part or section of the statute to produce a harmonious whole. *Land*, 202 Ill. 2d at 422. The doctrine is consistent with our acknowledgment that one of the fundamental principles of statutory construction is to view all of the provisions of a statute as a whole. *Land*, 202 Ill. 2d at 422. Words and phrases should not be construed in isolation, but interpreted in light of other relevant portions of the statute so that, if possible, no term is rendered superfluous or meaningless. *Land*, 202 Ill. 2d at 422. Further, we presume that the legislature, when it enacted the statute, did not intend absurdity, inconvenience, or injustice. *Land*, 202 Ill. 2d at 422. Sections 6—704 must be read with the other sections of the Illinois Vehicle Code, and not considered in a vacuum, in order to promote a whole and harmonious interpretation.

■ Section 6—704(2) allows for a new resident with a revoked license of a party state to make an application after one year for a license if permitted by law. We find "if permitted by law" means if the application is permitted under Illinois law. The Iowa Supreme Court also interpreted "if permitted by law" under Iowa's reciprocal provision of the Compact to mean if permitted by Iowa law. *State v. Vargason*, 607 N.W.2d 691, 697 (Iowa 2000). Therefore, we consider whether section 6—208(b) excludes Girard's application as a new resident

whose license has been revoked in Florida for four DUI convictions because such an application is not permitted by Illinois law.

Our interpretation of the first sentence of section 6—208(b) is determinative. This sentence provides that "Any person whose license, permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license, permit or privilege renewed or restored." 625 ILCS 5/6—208(b) (West 2000). Girard claims this sentence shows that the statute does not apply to new residents because "license" means an Illinois driver's license as defined in the Code (see 625 ILCS 5/1—116.1 (West 2000)). Girard further contends that this interpretation is correct because the Secretary cannot "renew" or "restore" a license it did not issue. Girard maintains that the legislature inadvertently created a loophole in section 6—208(b) where a new resident is not subject to the same restrictions as an Illinois resident whose license has been revoked.

We disagree and do not view section 6—208(b) as creating a loophole. The first sentence of section 6—208(b) applies to "[a]ny person whose license, permit or *privilege* to drive a motor vehicle on the highways has been revoked." Privilege is not specifically defined in the Code. The Code does define a "nonresident's driving privilege" as "The privilege conferred upon a nonresident by the laws of this State pertaining to the operation by such person of a motor vehicle, or the use of a vehicle owned by such person, in this State." 625 ILCS 5/1—150 (West 2000). Also, the Code defines "license to drive" as

> "Any driver's license or any other license or permit to operate a motor vehicle issued under the laws of this State including:
>
> 1. Any temporary license or instruction permit;
>
> 2. The privilege of any person to drive a motor vehicle whether or not such person holds a valid license or permit.
>
> 3. Any nonresident's driving privilege as defined herein." 625 ILCS 5/1—138 (West 2000).

In *People v. Odumuyiwa*, 188 Ill. App. 3d 40 (1989), the Second District considered whether the Secretary was able to suspend the defendant's driving privilege after he had already cancelled the defendant's driver's license. The court observed that the term "license to drive" covers two distinct meanings: (1) the physical document itself, and (2) the abstract intangible privilege of driving. *Odumuyiwa*, 188 Ill. App. 3d at 44. Since nothing in the record explained why the defendant's driver's license was cancelled or why his driving privileges were suspended, the reviewing court saw "no reason why these two actions by the Secretary should be considered mutually exclusive or logically inconsistent." *Odumuyiwa*, 188 Ill. App. 3d at 45.

The court's distinction in *Odumuyiwa* that the privilege to drive

encompasses an abstract or intangible ability that may be suspended separate from a course of action against the physical driver's license is instructive. The privilege to drive, in contrast to a driver's license or permit, does not directly correlate to a grant of authority by the Secretary in the form of a physical document. We believe that the privilege to drive under section 6—208(b) is meant to include individuals, such as Girard, whose privilege to drive has been revoked and wish to have such privilege restored.

This interpretation of "privilege to drive" avoids an absurd result. Under this interpretation, new residents of Illinois with revoked foreign driver's licenses are subject to the same restrictions as Illinois drivers who have had their licenses revoked in Illinois. We presume that the legislature did not intend absurdity. *Land*, 202 Ill. 2d at 422. Additionally, this construction is consistent with the strong public policy in Illinois to keep repeat drunk drivers off the roads. Illinois has an interest in preventing individuals with four DUI convictions from obtaining driving privileges.

■ Under this application, Girard lost his privilege to drive when his Florida driver's license was revoked. Girard is now seeking to have his privilege to drive restored, but is barred by sections 6—208(b) and 6—208(b)(4). Girard has four DUI convictions from Florida. Under section 6—208, any person whose license, permit or privilege to drive on the highways has been revoked and who has four or more DUI convictions from this state or similar out-of-state offenses may not make application for a license. Girard is clearly excluded from making an application under section 6—208.

Moreover, Girard's argument that section 6—208 applies only to Illinois granted driving privileges adds restrictive language to the statutes that is not part of the plain language. Girard relies on *People v. Weakley*, 176 Ill. App. 3d 274 (1988), and *People v. Shaw*, 189 Ill. App. 3d 808 (1989), as support for his argument. In *Weakley*, the court considered whether an out-of-state resident could be charged with driving on a revoked license under section 6—303(a). *Weakley*, 176 Ill. App. 3d at 274-75. Specifically, the State wanted to charge an Iowa resident whose driver's license was revoked by Iowa with the offense of driving with a revoked license under Illinois law. *Weakley*, 176 Ill. App. 3d at 274-75. The *Weakley* court concluded that the language of section 6—303(a), which stated that "Any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license *** is revoked or suspended *as provided by this Code or any other law* ***" (emphasis added) (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(a)), did not reveal the legislature's intent to broaden its application to foreign jurisdic-

tions because the statute referred to the Code. *Weakley*, 176 Ill. App. 3d at 276. Similarly, in *Shaw*, the reviewing court held that section 6—303(d) did not specifically include the consideration of foreign DUI convictions in order to elevate the classification of an Illinois conviction and instead refers to sections of the Code. *Shaw*, 189 Ill. App. 3d at 809-10. The State in *Shaw* attempted to use the defendant's prior DUI conviction from Iowa to charge him with a Class 4 felony after a second violation of driving with a revoked driver's license under the Code. *Shaw*, 189 Ill. App. 3d at 808-09. Because section 6—303(d) is penal in nature, the *Shaw* court strictly construed the language against the drafter and declined to use an out-of-state conviction to charge the defendant with a felony when the statutory language did not state that foreign convictions could be considered. *Shaw*, 189 Ill. App. 3d at 810.

Unlike the statutes at issue in *Weakley* and *Shaw*, sections 6—208(b) and (b)(4) do not restrict applications to revocations under the Code. Girard is asking this court to read in language that the legislature has not included. Section 6—208(b) does not restrict its application to persons whose Illinois driving privileges have been revoked. If the legislature had wanted to restrict section 6—208 to revocations under the Illinois Code, it could have done so. One may presume that the legislature, when drafting the language of the section, was aware of the construction and use of a term in another section. *Divane v. Smith*, 332 Ill. App. 3d 548, 553 (2002). Legislative intent as to the meaning of words can be ascertained from the history of the legislation or from the use of the term in other sections of the same or other Illinois statutes. Accordingly, where the legislature uses certain words in one instance and different words in another, it intends different results. *Divane*, 332 Ill. App. 3d at 553. Sections 6—208(b) and (b)(4) specifically include any person whose driving privileges have been revoked upon the highways and has had four or more DUI convictions including out-of-state convictions from making an application. Although Girard does not hold an Illinois driver's license, his "privilege to drive upon the highways" has been permanently revoked in Florida and he is attempting to have that privilege to drive restored in Illinois. This he cannot do.

*Weakley* and *Shaw* are distinguishable because the statutes at issue contained language that indicated application only to actions within the Code, and such language is not present in section 6—208(b)(4). Those statutes dealt with whether someone could be charged with an offense in contrast to the statutes at issue concerning whether a new resident with four DUI convictions may make application for a driver's license. Additionally, both cases involved penal

statutes which must be strictly construed against the drafter and in favor of the accused (*People v. Woodard*, 175 Ill. 2d 435, 444 (1997)), whereas in the instant case, the statute is procedural in nature.

Moreover, Girard's interpretation of section 6—704(2) fails to consider what "if permitted by law" means. Section 6—704 does not give the Secretary more power to issue new residents driver's licenses than he possesses to issue licenses to Illinois residents. See *Illinois RSA No. 3, Inc. v. Department of Central Management Services*, 348 Ill. App. 3d 72, 76 (2004) (an administrative agency has only such authority as conferred by statute); 625 ILCS 5/2—104(b) (West 2000). We do not read section 6—704 in such a way that its application trumps all other provisions of the Code in which the Secretary's power is limited. Under sections 6—208(b) and (b)(4), the legislature restricted the Secretary from permitting applications for individuals with four or more DUI convictions. Section 6—704 must be read in part with the limitations imposed by the legislature on the Secretary, and clearly, the legislature has directed that an individual like Girard cannot make an application for an Illinois driver's license. We cannot adopt an interpretation which circumvents the Illinois public policy to prohibit repeat DUI offenders from obtaining driving privileges. Section 6—704(2) specifically states that a new resident with a revoked license may make an application if permitted by law, and in Girard's case, his application is not permitted by law. Girard also claims that section 6—208(b) does not apply to him because he is not seeking to have Illinois driving privileges renewed or restored. As pointed out above, we construe section 6—208(b) to mean that any person whose privilege to drive was revoked in another state and is now seeking driving privileges as a new resident of Illinois is applying to have his driving privileges restored.

Because we have found that Girard is not eligible to make an application, the Secretary cannot grant any relief to Girard.

Based on the foregoing reasons, the order of the circuit court of Cook County is reversed and the order of the Secretary of State denying Girard's application for an Illinois driver's license is reinstated; the order of the Secretary of State granting Girard a restricted driving permit is vacated.

Judgment reversed; order of the Secretary of State reinstated in part and vacated in part.

CAHILL, P.J. and GORDON, J., concur.