TOWN OF GROTON ET AL. *v.* MARDIE LANE
HOMES, LLC, ET AL.
(SC 17986)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued November 29, 2007—officially released April 1, 2008

*Bruce L. Elstein*, with whom, on the brief, was *Henry Elstein*, for the appellant (defendant East Haven Builders Supply, Inc.).

*Peter E. Strniste, Jr.*, with whom were *Robert M. Barrack* and *Michael Carey*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The sole issue in this appeal[1] is whether a mortgage is a conveyance under General Statutes § 8-26c. In this declaratory judgment action, the defendant East Haven Builders Supply, Inc.,[2] appeals from the grant of summary judgment rendered in favor of the plaintiffs, the town of Groton (town) and RLI Insurance Company (RLI). On appeal, the defendant, which holds a mortgage interest on a number of the subdivision lots, contends that the trial court improperly concluded that the granting of a mortgage interest in subdivision property did not constitute a conveyance pursuant to § 8-26c.[3] We affirm the judgment of the trial court.

---

[1] The defendant East Haven Builders Supply, Inc., appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Although the plaintiffs brought this action against numerous defendants, all of whom had an interest in the subdivision lots, only East Haven Builders Supply, Inc., has appealed from the judgment of the trial court, and we refer to it as the defendant hereinafter. The trial court granted the plaintiffs' motion for default for failure to appear as to the named defendant, Mardie Lane Homes, LLC, by order dated August 27, 2004. The defendant was cited in as an additional party on September 14, 2004.

[3] In its brief, the defendant also challenges the validity of the town planning commission's declaration that the subdivision plan had expired. The defendant claims that the expiration notice was defective, and that the town failed to make a required finding that there had been no conveyances pursuant to § 8-26c (c) during the five year period. At oral argument, however, the defendant conceded both that the trial court had not addressed these claims

The record reveals the following undisputed relevant facts and procedure. On October 27, 1998, the named defendant, Mardie Lane Homes, LLC (Mardie Lane Homes), received conditional approval from the town planning commission (commission) for construction of a subdivision on its property. Subdivision plans proposed the construction of public improvements including the construction of roads, recreation areas and lot monumentation. As a condition of its approval, the town required Mardie Lane Homes to post a performance bond with surety to ensure that the proposed public improvements would be completed. Mardie Lane Homes, as principal, and RLI, as surety, issued the bond to the town as the obligee.[4]

Section 8-26c[5] sets a five year deadline starting from the date of the approval of a subdivision plan, for the

and that the defendant had not moved for articulation by the trial court. Because the claim is not preserved, we do not address it.

[4] The subdivision bond provides in relevant part that "if the [p]rincipal satisfactorily completes such improvements on or before October 27, 2003 and such improvements are accepted by the [town], this obligation shall be null and void. Otherwise it shall remain in full force and effect and the [p]rincipal and [s]urety shall be liable, jointly and severally, for such amount as the [town] may reasonably expend or contract to expend in completing such improvements . . . ."

[5] General Statutes § 8-26c provides in relevant part: "(a) Any person, firm or corporation making any subdivision of land, except as provided in section 8-26g, shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision; the commission's endorsement of approval on the plan shall state the date on which such five-year period expires.

"(b) The subdivider or his successor in interest may apply for and the commission may grant one or more extensions of the time to complete all or part of the work in connection with such subdivision, provided the time for all extensions under this subsection shall not exceed ten years from the date the subdivision was approved. If the commission grants an extension of an approval, the commission may condition the approval on a determination of the adequacy of the amount of the bond or other surety furnished under section 8-25, securing to the municipality the actual completion of the work.

"(c) In the case of a subdivision plan approved on or after October 1, 1977, failure to complete all work within such five-year period or any exten-

subdivider to complete all work in connection with the subdivision. The failure to complete the improvements within the five year time frame results in "automatic expiration of the approval of such plan provided the commission shall file on the land records of the town in which such subdivision is located notice of such expiration and shall state such expiration on the subdivision plan on file in the office of the town clerk of such town . . . ." General Statutes § 8-26c (c). If, during the five year period, "lots have been conveyed," the town "shall call the bond . . . to the extent necessary to complete the bonded improvements and utilities required to serve those lots. . . ." General Statutes § 8-26c (c).

After the approval of the subdivision plan, a number of parties, including the defendant, obtained various types of interests in subdivision lots, including mortgage interests.[6] By October 27, 2003, five years after the approval of the subdivision plan, the proposed public

sion thereof shall result in automatic expiration of the approval of such plan provided the commission shall file on the land records of the town in which such subdivision is located notice of such expiration and shall state such expiration on the subdivision plan on file in the office of the town clerk of such town, and no additional lots in the subdivision shall be conveyed by the subdivider or his successor in interest as such subdivider except with approval by the commission of a new application for subdivision of the subject land. If lots have been conveyed during such five-year period or any extension thereof, the municipality shall call the bond or other surety on said subdivision to the extent necessary to complete the bonded improvements and utilities required to serve those lots. 'Work' for purposes of this section means all physical improvements required by the approved plan, other than the staking out of lots, and includes but is not limited to the construction of roads, storm drainage facilities and water and sewer lines, the setting aside of open space and recreation areas, installation of telephone and electric services, planting of trees or other landscaping, and installation of retaining walls or other structures. . . ."

[6] Mardie Lane Homes had executed a promissory note in favor of the defendant in the principal amount of $300,000, secured by a mortgage on a number of the subdivision lots. The defendant's mortgage was not the primary mortgage on the lots.

improvements had not been completed. During its November 10, 2003 meeting, the commission determined that the approval of the subdivision plan had expired and recorded a formal notice of subdivision expiration on the town land records. Several of the parties that had acquired interests in subdivision lots after the plan approval demanded that the town call the performance bond to construct the proposed public improvements pursuant to § 8-26c (c). The parties claimed that, because the various transfers of interest in subdivision lots constituted conveyances under § 8-26c, the town was required to call the bond.

In response to the demands that the town call the bond, the town and RLI filed this action against all persons having interests in subdivision lots, seeking a declaratory judgment that the town had no obligation under § 8-26c to call the performance bond as a result of the various transfers of interest in subdivision lots. The defendant filed a counterclaim, seeking orders directing the town to rescind its notice of expiration of the subdivision, and to call the bond.[7] The plaintiffs moved for summary judgment, arguing that, because none of the transfers of interest constituted conveyances under § 8-26c, the town had no obligation to call the bond. The defendant filed a cross motion for summary judgment, arguing that, because all the subdivision lots had been conveyed for purposes of § 8-26c, through foreclosure actions, mortgages or mechanic's liens, the town was required by statute to call the bond. The trial court rendered summary judgment in favor of the plaintiffs on the complaint and on the defendant's counterclaim, concluding that mortgages were not conveyances under § 8-26c. This appeal followed.

[7] Wells Fargo Business Credit, Inc., which originally was named as a defendant but is not a party to this appeal, joined the defendant in its answer and counterclaim.

The parties do not dispute that the defendant acquired a mortgage interest in various of the subdivision lots. The question is whether the transaction through which the defendant acquired that mortgage interest constituted a conveyance under § 8-26c, triggering the town's duty under the statute to call the performance bond. The defendant claims that the trial court improperly construed the term conveyance in § 8-26c to exclude the transfer of a mortgage interest.[8] The defendant relies on the broader, common understanding of the term conveyance to include various transfers of interest in land, including transfers of mortgage interests. The plaintiffs contend that the court properly interpreted the term conveyance to apply solely to the conveyance of lots, and not the conveyance of an interest in lots, such as a mortgage interest. We agree with the plaintiffs.

Because the question of whether a mortgage is a conveyance under § 8-26c is one of statutory interpretation, our review is plenary. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to

[8] The defendant also argues on appeal that the trial court should have concluded that the town was statutorily obligated to call the bond because other parties had foreclosed on some of the subdivision lots. The defendant contends that the lots that had been foreclosed had been conveyed under § 8-26c (c), triggering the town's duty to call the bond. The trial court, focusing on the interest that the defendant itself claimed in the subdivision lots, properly based its ruling on the cross motions for summary judgment solely upon the mortgage interest that the defendant had acquired in subdivision lots. Because the defendant has not foreclosed on its mortgage, we do not address the question of whether acquiring an interest by foreclosure would constitute a conveyance under § 8-26c (c).

determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 847, 937 A.2d 39 (2008).

We begin with the language of the statute. The provision at issue provides in relevant part that, "[i]f *lots have been conveyed* during such five-year period or any extension thereof, the municipality shall call the bond or other surety on said subdivision to the extent necessary to complete the bonded improvements and utilities required to serve those lots. . . ." (Emphasis added.) General Statutes § 8-26c (c). The statute does not refer to conveyances generally. It specifically contemplates the conveyance of lots. This conclusion is reinforced by two additional references to lots in subsection (c). First, if the subdivision expires because of the passing of the five year period without the public improvements, "no additional lots in the subdivision shall be conveyed by the subdivider or his successor in interest . . . except with approval by the commission of a new application for subdivision of the subject land. . . ." General Statutes § 8-26c (c). Second, the conveyance of lots prior to the expiration of the five year period triggers the town's duty to call the bond to the extent necessary

to complete the improvements "required to serve those lots. . . ." General Statutes § 8-26c (c). The only logical reading of these three references to lots in subsection (c) is that the term conveyance as used in this subsection refers specifically to the conveyance of lots. Two of the references draw a direct and express connection by referring explicitly to conveying lots. The third reference, establishing that the limit of the town's duty is to call the bond to the extent necessary to complete the improvements "required to serve those lots"; General Statutes § 8-26c (c); indicates that it is the need to serve the lots that gives rise to the town's duty to call the bond. This link between the town's duty and the service requirements of the subdivision lots supports the conclusion that the town's duty is triggered only by the conveyance of those lots.

Our next task is to determine what it means to say that a subdivider has conveyed a lot. Because neither "conveyance" nor "lot" is defined in the statute, in construing those terms, we look to their "commonly approved usage . . . ." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman,* 283 Conn. 644, 656, 931 A.2d 142 (2007). "Lot" is defined as "one of several parcels into which property is divided. Any portion, piece, division or parcel of land. . . . A lot is commonly one of several other contiguous parcels of land making up a block. . . ." (Citations omitted.) Black's Law Dictionary (6th Ed. 1990). Put simply, a lot is a parcel of land. A conveyance, "[i]n its most common usage [is a] transfer of title to land from one person, or class of persons, to another by deed. [The] [t]erm may also include assignment, lease, mortgage or

encumbrance of land. . . ." Id. A conveyance of a lot, therefore, is the transfer of title to a parcel of land from one person or class of persons, to another by deed. Although a person may convey many different types of interests in land to another, including assignments, leases, mortgages or other encumbrances, when someone conveys a lot, the interest conveyed is ownership of a parcel of land.[9]

We find unpersuasive the defendant's reliance on general definitions of the term "conveyance." Statutory terms cannot be taken out of context, but must be understood within "the statutory scheme of which they are a part." *Broadnax* v. *New Haven*, 284 Conn. 237, 245, 932 A.2d 1063 (2007). Although the term "conveyance" may include the transfer of a mortgage interest in different contexts; see, e.g., *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 433, 429 A.2d 908 (1980) (considering meaning of term "conveyance" in specific context of Uniform Fraudulent Conveyance Act); that broad meaning is not consistent with the plain and unambiguous language of § 8-26c.

We are similarly unpersuaded by the defendant's reliance on the fact that "Connecticut follows the title

---

[9] Our conclusion, that the plain and unambiguous meaning of the statutory language is that the term "conveyance" is restricted to the conveyance of subdivision lots, and does not encompass the transfer of partial interests in lots, is supported by the fact that § 8-26c (c) provides that, once the approval of the subdivision plan has expired, "no additional lots in the subdivision shall be conveyed by the subdivider *or his successor in interest* . . . ." (Emphasis added.) The statute contemplates that the subdivider may have a successor in interest. A successor in interest would stand in the place of the subdivider and be responsible for completing the subdivision's public improvements. General Statutes § 8-26c (b). Although subsection (c) recognizes that a subdivider may have a successor in interest, there is no mention in the statute that the conveyance of the subdivider's interest in the land to a successor in interest would trigger the town's duty to call the bond. Thus, the statute envisions that at least some transfers of interest in subdivision lots, rather than creating a duty on the part of the town, merely substitute another party in place of the original subdivider.

theory of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property." (Internal quotation marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *White*, 278 Conn. 219, 231, 896 A.2d 797 (2006). Although a mortgagee holds legal title to the property, we have stated that "the law is well settled that, except as between the immediate parties, the mortgagor before foreclosure is the owner of the property . . . while the interest of the mortgagee is mere personal estate . . . ." (Citations omitted; internal quotation marks omitted.) *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 569–70, 620 A.2d 118 (1993). We have recognized that the title theory of mortgages is "a series of legal fictions [that serves] as a convenient means of defining the various estates to which conveyances may give rise. . . . Despite our title theory of mortgages, [i]n substance and effect . . . and except for a very limited purpose, the mortgage is regarded as mere security . . . and the mortgagor is for most purposes regarded as the sole owner of the land . . . . The mortgagee has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage." (Citations omitted; internal quotation marks omitted.) Id., 569. Although the mortgagee gains legal title to the property, the mortgagor remains its true owner. The series of legal fictions of which the title theory is comprised cannot turn the transfer of a mortgage interest into the conveyance of a lot.

The judgment is affirmed.

In this opinion the other justices concurred.