# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

MCGINNIS COMMERCIAL REAL
ESTATE COMPANY,

    Plaintiff-Below/Appellant,

        v.

ANDRES JANKES,

    Defendant-Below/Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

Consolidated:
C.A. No. CPU5-14-000701

---

COURTNEY SQUARE ASSOCIATES

    Plaintiff,

        v.

ANDRES JANKES,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

Steven E. Smith, Esquire
Baird, Mandalas, Brockstedt, LLC
6 South State Street
Dover, DE 19901
   *Attorney for Plaintiff*

Andres Jankes
15 Acorn Forrest Drive
Felton, DE 19943
   *Self-Represented Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

This consolidated action originated in the Justice of the Peace Court and is based on an alleged breach of commercial lease.[1] McGinnis and Courtney Square (collectively, "Plaintiffs") allege that Defendant leased commercial property from Plaintiffs, located at the north end of the Courtney Square Shopping Center in Dover, DE (the "Lease"), and breached the Lease by failing to pay Common Area Maintenance Charges ("CAM Charges"). Plaintiffs seek damages in the amount of $5,124.53, plus interests, costs, and attorneys' fees.

On December 3, 2015, the Court held trial and heard testimony from Phillip McGinnis ("Mr. McGinnis")[2] and Defendant. The Court also received documentary evidence from both parties, which mostly consisted of invoices detailing property tax prorations, insurance prorations, utilities consumption, and CAM Charges. During trial, it became apparent that there were some matters that could be resolved outside of trial. Thus, the Court reserved its decision, and ordered the parties to confer with one another to determine which matters required judicial resolution.

On January 12, 2016, Plaintiffs submitted a letter memorandum to the Court on behalf of all parties, which, inter alia, set forth the issues of which the parties reached agreement. For example, the parties agreed that the amount sought by Plaintiffs should be reduced to $4,921.97 because Plaintiffs conceded that two charges were not CAM Charges.[3] Thus, the amount originally sought in connection with those two charges was adjusted by Defendant's 16.5% share

---

[1] McGinnis Commercial Real Estate and Co. ("McGinnis") filed a Complaint on Appeal against Andres Jankes ("Defendant"), and Courtney Square Associates ("Courtney Square") filed a separate Complaint against Defendant. McGinnis's Complaint on Appeal and Courtney Square's Complaint are based on the same operative facts and circumstances, and therefore, the Court consolidated these cases under the above-referenced caption.

[2] Mr. McGinnis has managed the shopping center for a number of years, and inherited the property from his father in 2009.

[3] These charges included the October 27, 2009 double charge of $402.60, and the October 20, 2010 canopy charge of $825.00.

of the shopping center CAM Charges as provided by the Lease.[4] In addition to detailing where they reached agreement, the parties presented three charges that remain in dispute: (1) a charge for installing certain parking signs, dated September 17, 2008, in the amount of $1,295.00; (2) a charge for pothole repairs, dated May 30, 2010, in the amount of $1,200.00; and (3) a second charge for pothole repairs, dated October 20, 2010, in the amount of $1,900.00.

Defendant does not challenge the accuracy of the payments in dispute, nor does he claim that he paid these charges. Instead, Defendant argues that the disputed charges qualify as capital improvements to the shopping center, and are not proper CAM Charges. Therefore, Defendant claims that he is not liable for the expenses incurred. Plaintiffs maintain that the charges do qualify as CAM Charges because they incurred these expenses while repairing and maintaining the shopping center. Thus, the sole issue before the Court is whether the disputed charges are properly classified as CAM Charges. This is the Court's decision after trial.

## THE LEASE

On April 1, 2007, Courtney Square and Defendant entered into the Lease.[5] The commercial building located in the Courtney Square Shopping Center is approximately 12,000 square feet. Defendant rented approximately 2,000 square feet of that building, which resulted in Defendant having a 16.5% pro-rata share for purposes of CAM Charges. In exchange for renting a commercial retail store from Plaintiffs, Defendant agreed to pay rent in monthly installments, as well as additional rent to cover the cost of his pro-rata share of property taxes, insurance

---

[4] The amount owed with respect to the October 27, 2009 double charge equals $66.43, and the amount owed with respect to the October 20, 2010 canopy charge equals $136.13.

[5] Defendant entered the Lease on behalf of his business, "Frankfurt Bakery and Sandwich Shop," a non-corporate entity.

3

premiums, utilities consumption, and CAM Charges.[6] The Lease provides, in relevant part, the following, with respect to the parties' obligations:

> (21) <u>COMMON AREA MAINTENANCE</u>. The C.A.M. contribution shall be prorated to reflect Lessee's share of C.A.M. based on square footage of the [rented retail store] to the square footage of the entire building of which the [rented retail store] are a part. (.01653)

> (22) <u>EXTERIOR MAINTENANCE</u>. Lessor is responsible for all exterior building maintenance[,] including roof, structural walls, and underground utilities.

> (36) <u>LESSOR'S OBLIGATIONS</u>. Lessor hereby agrees to . . . (g) maintain and keep in a good state of repair the foundation, electrical wiring, piping and plumbing which are underground or overhead leading to the Property, exterior walls excluding any plate glass or glass windows or doors, and structural members of the building.

## DISCUSSION

Plaintiffs brought this action for breach of the Lease, which is governed by Delaware contract law.[7] In order to prevail on a breach of contract claim, Plaintiffs must prove, by a preponderance of the evidence, that: (1) an agreement existed between Plaintiffs and Defendant; (2) Defendant breached an obligation imposed by the contract; and (3) as a result of that breach, Plaintiffs suffered damages.[8] It is undisputed that an agreement existed between the parties, however, the parties dispute whether Defendant failed to fulfill his obligations under the Lease with respect to paying for the CAM Charges at issue.

The Court is called upon to interpret the meaning of "maintenance" as it applies under the Lease with respect to the provision outlining CAM Charges. "'The proper interpretation of

---

[6] Pl. Ex. 1. Tab. 1 ¶ 11.

[7] Pursuant to 25 *Del. C.* 5101(b), "[a]ll legal rights, remedies and obligations under any agreement for the rental of any commercial rental unit shall be governed by general contract principles."

[8] *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

4

language in a contract is a question of law.'"[9] Delaware courts adhere to the objective theory of contract interpretation,[10] and will interpret contracts "as would an objectively reasonable third-party observer."[11] Ultimately, the Court's goal when interpreting a contract is to determine the parties' shared intent.[12] This requires the Court to look to the words within "the four corners of the agreement."[13] When a contract is clear and unambiguous, the Court will interpret the terms according to their ordinary meaning,[14] and if the "plain, common, and ordinary meaning of the words lends itself to only one reasonable interpretation, that interpretation controls the litigation."[15]

The term "maintenance," is not defined in the Lease. "A term is not ambiguous simply because it is not defined."[16] When ascertaining the meaning of a term not defined by a contract, Delaware courts routinely "look to dictionaries for assistance in determining the plain meaning of terms which are not defined."[17] The word "maintenance" is defined by Black's Law Dictionary ("Black's Law") as "[t]he care and work put into property to keep it operating and productive; general repair and upkeep."[18]

In this matter, the Court must determine whether the three charges that remain in dispute—a charge for installing certain parking signs, and the charges for the two pothole repairs—were properly classified as common area "maintenance" charges under the Lease.

---

[9] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *2 (Del. Super. 2015) (quoting *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 581 (Del. Ch. 2006)).

[10] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (2010) (quoting *NBS Universal v. Paxon Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005))

[11] *Sassano v. CIBC World Markets Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008) (citations omitted).

[12] *D.W. Burt Concrete Construction, Inc. v. Dewey Beach Enterprises, Inc.*, 2016 WL 639653, at *5 (quoting *A T & T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008)).

[13] *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012).

[14] *Id.* at 780.

[15] *Sassano*, 948 A.2d at 462 (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del.1997); *Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 1930428, at *3 (Del. Ch. 2007)).

[16] *Sassano*, 948 A.2d at 468 n. 86 (citations omitted).

[17] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) (citing *Northwestern National Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 44 (Del.1996)).

[18] MAINTENANCE, Black's Law Dictionary (10th ed. 2014).

## A. Pothole Repairs

The Court finds that the two charges for the pothole repairs were properly classified as CAM Charges. An objectively reasonable third-party observer would conclude that the charges for the pothole repairs fall within the purview of the plain meaning of "maintenance" as defined by Black's Law. Indeed, the definition of "maintenance" references "general repair and upkeep," which logically includes the act of restoring the common parking lot, after parts of it decayed or were otherwise destroyed.[19] While the Court appreciates Defendant's concern that an excessive amount of pothole repairs in a given period of time may be beyond the scope of what would be considered general repairs or maintenance, the record is void of any evidence supporting this contention. The repairs at issue here concerned approximately three or four potholes located in different areas of the parking lot, and were not so extensive that they could be thought as a total restoration of the parking lot. In this case, the Court finds that the charges for the pothole repairs are akin to the charges for snow removal and salting (which Defendant conceded were his responsibility under the Lease) because all three actions are a means of generally maintaining the parking lot so that it remained productive and operational. Thus, the two pothole repairs— the first charge dated May 3, 2010 in the amount of $1,200.00 and the second charge dated October 20, 2010 in the amount of $1,900.00—are properly classified as CAM Charges.

---

[19] This analysis falls in line with Black's Law definition of "repair." When using the word "repair" as a verb, Black's Law provides the following definition: "1. To restore to a sound or good condition after decay, waste, injury, partial destruction, dilapidation, etc.; to fix . . ." (REPAIR, Black's Law Dictionary (10th ed. 2014). The word "repair," when used as a noun, is defined by Black's Law as "The process of restoring something that has been subjected to decay, waste, injury, or partial destruction, dilapidation, etc.; an instance or a result of this process <the repair of a building> <hardly noticeable repairs>. (REPAIR, Black's Law Dictionary (10th ed. 2014).

## B. Parking Signs

The Court also finds that the charge for installing certain parking signs was properly classified as a CAM Charge. The Court finds that an objectively reasonable third-party observer would conclude that the charges for the installation of the parking sign fall within the purview of the plain meaning of "maintenance" as defined by Black's Law. Mr. McGinnis testified that the parking signs at issue placed a thirty-minute-limit on parking and were installed at the request of two of Plaintiffs' tenants to ensure that only paying customers utilized the parking lot.[20] The tenants complained that individuals were parking their cars in the lot for protracted periods of time without patronizing any of the shopping center's businesses, which limited the amount of spaces available to actual customers, and rendered the parking lot less productive and operational than expected. Installing the thirty-minute-limit signs, however, ensured that the parking lot is functioning properly and is being utilized for the shopping center's businesses only. Indeed, placing thirty-minute-limit parking signs in the lot is a means of generally maintaining the parking lot so that it remained productive and operational. If the parking lot remained occupied by individuals who were not patronizing the shopping center's businesses, then the parking lot would fail to serve its purpose, which is to provide business patrons a space to park cars while shopping. Thus, the charge for installing the thirty-minute-limit parking signs, dated September 17, 2008, in the amount of $1,295.00, is properly classified as a CAM Charge.

---

[20] Mr. McGinnis explained that the signage was installed before he inherited the commercial property, however, since he managed the property for an extensive period of time before that, he was "almost certain" that two of the tenants requested the signs.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant is in breach of contract for failing to pay for the three CAM Charges—a charge for installing certain parking signs in the amount of $1,295.00; a charge for pothole repairs in the amount of $1,200.00; and a second charge for pothole repairs in the amount of $1,900.00. Defendant is responsible to pay his 16.5% share of these charges because they are properly classified as CAM Charges under the Lease. In addition, Plaintiffs are responsible for their attorneys' fees and costs. Accordingly, the Court enters judgment in favor of Plaintiffs in the amount of $4,921.97, plus pre- and post-judgment interest at the legal rate, for breach of contract.

**IT IS SO ORDERED this 29ᵗʰ day of March, 2016.**

Sheldon K. Rennie,
Judge

8