CONNECTICUT CARPENTERS BENEFIT FUNDS *v.*
BURKHARD HOTEL PARTNERS II, LLC
(AC 23891)

Bishop, West and DiPentima, Js.

Argued January 20—officially released June 15, 2004

*Martin A. Gould,* with whom was *Mark W. Baronas,* for the appellant (plaintiff).

*Julie A. Manning,* for the appellee (defendant).

*Opinion*

BISHOP, J. The principal issue in this appeal is whether an employee benefits fund has standing to bring an action to foreclose a mechanic's lien, pursuant to General Statutes § 49-33, on behalf of and for the benefit of the employees who performed the work.

The plaintiff, the Connecticut Carpenters Benefit Funds, appeals from the judgment of the trial court rendered after it granted the motion, filed by the defendant, Burkhard Hotel Partners II, LLC, to strike the revised amended complaint. On appeal, the plaintiff claims that the court improperly concluded that in a mechanic's lien foreclosure action, the plaintiff is required to allege that the defendant owner (1) knew of the specific agreement providing for compensation services, (2) agreed to make the payments for the subject services or authorized its general contractors to do so and (3) failed to make payments for the work performed on the premises. We agree and, accordingly, reverse the judgment of the trial court.

In its operative complaint, filed February 13, 2002, the plaintiff alleged the following facts, which are relevant to our discussion of the issues on appeal. The plaintiff alleged that the defendant had contracted with Burkhard Construction, an entity related to the defendant property owner, to build a hotel on the defendant's property. Burkhard Construction then subcontracted with Migi Construction, LLC (Migi), to perform carpentry work on the hotel. Migi subsequently entered into a contract with several carpenters to perform work on the building and agreed to pay them an hourly wage. Included in the wage package were fringe benefits that were to be paid directly to the plaintiff, which accepts and administers those benefits on behalf of the carpenters. Although the carpenters completed the work, Migi did not fulfill its contractual obligation and pay the fringe benefits to the plaintiff on behalf of the carpenters. Thereafter, the plaintiff filed a mechanic's lien on the defendant's property and instituted this action to foreclose the lien on behalf of and for the benefit of those carpenters whose fringe benefits were not remitted to the plaintiff.

On April 11, 2002, the defendant filed a motion to strike the complaint, and on October 15, 2002, the court granted the motion, concluding that the plaintiff had failed to allege a cause of action under the mechanic's lien statute. After oral argument, we ordered the parties to file supplemental briefs to address the question of whether the plaintiff, who did not, itself, directly furnish materials or render services in regard to construction on the subject premises, had standing to file and then seek to foreclose a mechanic's lien under § 49-33.

I

Prior to discussing the claims framed by the parties on appeal, we address the issue of standing that we have raised sua sponte. Specifically, we address the

question of whether this plaintiff, standing in the shoes of those who performed services on the defendant's land, may avail itself of the protections of § 49-33 even though it has not, itself, performed any services or furnished any materials in regard to construction on the defendant's land. Although that issue was not raised in the trial court or directly in the defendant's appellate briefs, we undertake an independent review of the question of standing because it implicates the court's subject matter jurisdiction. "Appellate courts, as well as trial courts, must examine an issue implicating subject matter jurisdiction. The question of standing may be raised by any of the parties, or by the court, sua sponte, at any time during judicial proceedings." *Grabowski* v. *Bristol*, 64 Conn. App. 448, 450, 780 A.2d 953 (2001).

"In order for a party to have standing to invoke the jurisdiction of the court, that party must be aggrieved. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit [in other words, statutorily aggrieved] or is classically aggrieved." (Internal quotation marks omitted.) *Edgewood Village, Inc.* v. *Housing Authority*, 265 Conn. 280, 288, 828 A.2d 52 (2003), cert. denied, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004).

"In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . The plaintiff must be within the zone of interests protected by the statute."

(Citations omitted; internal quotation marks omitted.) *St. George* v. *Gordon,* 264 Conn. 538, 545–46, 825 A.2d 90 (2003). Thus, resolution of the issue of standing depends primarily on the construction of § 49-33.

In interpreting that statute, we are guided by well settled principles of statutory construction. "Although the mechanic's lien law creates a statutory lien in derogation of the common law, its remedial purpose to furnish security for a contractor's labor and materials requires a generous construction. . . . Even bearing in mind the statute's beneficent purpose, we are, however, constrained by the language of the statute as we find it, and cannot rewrite the statute or adopt the reasoning of precedents in other jurisdictions with different statutes." (Citations omitted.) *Seaman* v. *Climate Control Corp.,* 181 Conn. 592, 597, 436 A.2d 271 (1980); see also Public Acts 2003, No. 03-154 (courts should first look to plain meaning of words of statute when interpreting statute's meaning).

General Statutes § 49-33 (a) provides in relevant part: "If *any person* has a claim for more than ten dollars for materials furnished or services rendered in the construction . . . of any building . . . and the claim is by virtue of an agreement with . . . some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands . . . is subject to the payment of the claim." (Emphasis added.) Thus, the statute provides relief to individuals who provide either services or materials in the construction of a building. See *H & S Torrington Associates* v. *Lutz Engineering Co.,* 185 Conn. 549, 553, 441 A.2d 171 (1981) ("purpose of the mechanic's lien is to give one who furnishes materials or services 'the security of the building and land for the payment of his claim by making such claim a lien thereon' ").

Our decisional law, however, has not previously addressed the precise issue we confront, i.e., whether a benefit fund acting on behalf of those who have performed services can reasonably be construed as "any person who has a claim," as that term is used in § 49-33 (a). In the absence of state decisional guidance, we look to the reasoning of other jurisdictions that have confronted analogous circumstances. In that regard, we find instructive the reasoning of the United States Supreme Court in *United States* v. *Carter*, 353 U.S. 210, 77 S. Ct. 793, 1 L. Ed. 2d 776 (1957). In *Carter*, the trustees of a benefits fund sued the surety on a contractor's payment bond, pursuant to the Miller Act, 40 U.S.C. § 270b,[1] when the contractor failed to make the required payments to the fund. Id., 213. The contractor had entered into a contract with the United States government to construct buildings and employed laborers to meet its goal. Id. Under the master labor agreement between the contractor and the employees union, the contractor had agreed to pay the laborers wages, which included fringe benefits to be paid directly to the trustees, who, in turn, were responsible for the administration of those funds on behalf of the employees. Id., 213–15. Because the contractor paid the wages but not the fringe benefits, the trustees then sued the contractor and its surety under § 2 (b) of the Miller Act. Id., 215. The United States District Court for the Northern District of California rendered summary judgment in favor of the defendant, finding that the fund trustees lacked standing to bring suit under the Miller Act because they did not perform labor or services in the construction of the building. Id. After the United States Court of Appeals for the Ninth Circuit affirmed the judgment of the District

---

[1] The Miller Act provides in relevant part: "Every person who has furnished labor or material in the prosecution of the work provided for in such contract . . . and who has not been paid in full therefor . . . shall have the right to sue on such payment bond . . . ." 40 U.S.C. § 270b (a).

Court, the Supreme Court reversed the judgment of the appeals court. Id., 221.

The defendant in *Carter* argued, inter alia, that the trustees lacked standing to sue on the bond because they had not furnished labor or materials. In rejecting the defendant's claim, the Supreme Court stated: "If the assignee of an employee can sue on the bond, the trustees of the employees' fund should be able to do so. Whether the trustees of the fund are, in a technical sense, assignees of the employees' rights to the contributions need not be decided. Suffice it to say that the trustees' relationship to the employees, as established by the master labor agreements and the trust agreement, is closely analogous to that of an assignment. The master labor agreements not only created [the defendant's] obligation to make the specified contributions, but simultaneously created the right of the trustees to collect those contributions on behalf of the employees. The trust agreement gave the trustees the exclusive right to enforce payment. The trustees stand in the shoes of the employees and are entitled to enforce their rights." Id., 219–20.[2]

The Supreme Court concluded that "[t]he trustees are claiming recovery for the sole benefit of the beneficiaries of the fund, and those beneficiaries are the very ones who have performed the labor. The contributions are the means by which the fund is maintained for the benefit of the employees and of other construction workers. For purposes of the Miller Act, these contributions are in substance as much 'justly due' to the

[2] Although the Supreme Court in reaching that conclusion made specific reference to cases decided under the repealed Heard Act, 28 Stat. 278, as amended, 33 Stat. 811, 36 Stat. 1167 (1894), the predecessor of the Miller Act; *United States* v. *Carter,* supra, 353 U.S. 216 & n.3; in which lawsuits by assignees of employees were allowed, we find the court's reasoning applicable to § 49-33 because of its analogous provisions.

employees who have earned them as are the wages payable directly to them in cash." Id., 220.

Although *Carter* was decided under the Miller Act and involved a claim under a payment bond, we find its legal and factual underpinnings sufficiently analogous to apply its rationale to our analysis of § 49-33.[3] We note that the language of the Miller Act is substantially similar to the language of our mechanic's lien statute and that both are to be liberally construed. Additionally, the stated purpose of both the Miller Act and our mechanic's lien statute is to protect individuals who in good faith provide materials or labor for the construction of buildings. See *H & S Torrington Associates* v. *Lutz Engineering Co.*, supra, 185 Conn. 553. Finally, the facts as pleaded by the plaintiff are similar to the facts in *Carter*. In both cases, there was an agreement by the defendant to pay fringe benefits for the employees directly to the plaintiffs, and those benefits were part of the wages that the employees were to receive. In both cases, the plaintiffs administered the funds on behalf of the employees, and it is clear that had the employees in either situation initiated the action themselves they would have had standing to sue. Last, the plaintiffs in both cases sought recovery not for themselves, but for the individuals who performed the labor for the benefit of the defendants. Accordingly, we find that the plaintiff, similarly situated to the trustees in *Carter*, stands in the carpenters' shoes and, as such, is entitled to enforce the carpenters' rights on their behalf. The plaintiff has standing under § 49-33.

Our application of the United States Supreme Court's reasoning in *Carter* to our mechanic's lien statute is consistent with that of the majority of jurisdictions that

[3] Connecticut has adopted the "Little Miller Act," General Statutes § 49-41 et seq., and our Supreme Court routinely has looked to federal precedents when interpreting the language of § 49-41. See *O & G Industries, Inc.* v. *New Milford*, 229 Conn. 303, 309, 640 A.2d 110 (1994).

have addressed the issue at hand when construing their mechanic's lien statutes. See *Divane* v. *Smith*, 332 Ill. App. 3d 548, 557, 774 N.E.2d 361 (concluding that "[a]lthough [*Carter*] involved a claim under a payment bond, we find it persuasive and its rationale applicable to the [Illinois mechanic's lien] Act"), leave to appeal denied, 202 Ill. 2d 601, 787 N.E.2d 156 (2002); *Performance Funding, LLC* v. *Arizona Pipe Trade Trust Funds*, 203 Ariz. 21, 25, 49 P.3d 293 (2002) (finding that "allowing the trust funds to assert a lien against the owner's property for the benefit of the laborers would further the purpose of the mechanics' lien statute"); *Hawaii Carpenters' Trust Funds* v. *Aloe Development Corp.*, 63 Haw. 566, 576, 633 P.2d 1106 (1981); *National Electrical Industry Fund* v. *Bethlehem Steel Corp.*, 296 Md. 541, 552, 463 A.2d 858 (1983).

The mechanic's lien statutes in those jurisdictions are substantially similar to § 49-33. They provide a lien for *persons who provide labor or services;* they were enacted to protect laborers. Finally, jurisprudence in those jurisdictions, the decisions of which we find instructive, opines that similar statutes affording lien protections for material and service providers should be liberally construed.

We reach that conclusion mindful that there are jurisdictions that have held that a benefits fund does not have standing to seek to foreclose a mechanic's lien. We find the decisions of those courts, however, less persuasive because those jurisdictions narrowly construe their mechanic's lien statutes. See, e.g., *Sprinkler Fitters & Apprentices Local Union No. 821, U.A.* v. *F.I.T.R. Service Corp.*, 461 So. 2d 144, 146 (Fla. App. 1984); *Edwards* v. *Bethlehem Steel Corp.*, 517 N.E.2d 430, 432 (Ind. App. 1988).

Having determined that the plaintiff had standing to bring its action, we now turn to the claims raised on appeal.[4]

## II

The plaintiff claims that the court improperly granted the defendant's motion to strike the complaint. We agree. "The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Johnson* v. *Mazza*, 80 Conn. App. 155, 158, 834 A.2d 725 (2003).

As part of our assessment, we also examine the language of § 49-33 to determine the statutory elements that must be present in order for one to foreclose a mechanic's lien. In that task, we are guided by our well established principles of statutory construction. Id., 159; see also *Seaman* v. *Climate Control Corp.*, supra, 181 Conn. 597, for a recitation of the standard of review.

---

[4] The defendant asserts that the plaintiff lacks standing to sue on the basis of our Supreme Court's holding in *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 380, 696 A.2d 326 (1997), in which the court held that an insurance company could not seek to foreclose a mechanic's lien to recover unpaid insurance premiums. The plaintiff insurance company in *Thompson & Peck, Inc.*, however, was seeking to recover in its individual capacity for its benefit and not on behalf of the individuals who performed the labor and services. Id., 373. Accordingly, the facts of *Thompson & Peck, Inc.*, are inapposite to the present case. We further note that insurance premiums, unrelated to the work performed, are of a different character than fringe benefits that are part of the wages paid for the employees.

## A

The plaintiff first claims that the court improperly concluded that in a mechanic's lien foreclosure action, the plaintiff is required to allege that the defendant owner knew of the specific agreement providing for compensation services. We agree.

General Statutes § 49-33 establishes a lien in favor of subcontractors "by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected . . . ." See also *Seaman* v. *Climate Control Corp.*, supra, 181 Conn. 595. It is well established that "[i]t is not necessary to their lien status that [a subcontractor] have any direct contractual relationship either with the owner or with the general contractor . . . ." Id., 596. All that is necessary is that the defendant consented to have a building erected on its property and that the lien was for materials or services provided in the erection of said building. See *J. L. Purcell, Inc.* v. *Libbey*, 111 Conn. 132, 137, 149 A. 225 (1930). We are unable to find any support in the language of the statute or in decisional law construing the statute for the proposition that in order to pursue the foreclosure of a mechanic's lien, a plaintiff must allege that the property owner was aware of the terms of the agreement between the plaintiff and the entity for which the services or materials were furnished. We conclude, therefore, that the plaintiff was not required to plead that the defendant was aware of the terms of the agreement between the carpenters and Migi. The court was therefore incorrect to strike the complaint on that basis.[5]

---

[5] The defendant argues that he merely granted permission and did not consent to the agreement with Migi. Accordingly, he argues, this case should be governed by our Supreme Court's holding in *Hall* v. *Peacock Fixture & Electric Co.*, 193 Conn. 290, 295, 475 A.2d 1100 (1984) (permission from landlord to tenant to renovate apartment not sufficient to support mechanic's lien against underlying property). The defendant's argument is premature because a motion to strike is not the proper vehicle to attack the underlying factual assertions in the complaint. As noted, the plaintiff pleaded that there

## B

The plaintiff next claims that the court improperly concluded that in a mechanic's lien foreclosure action the plaintiff is required to allege that the defendant agreed to make the payments for the subject services or authorized its general contractors to do so. Having already concluded that in a mechanic's lien foreclosure action, the plaintiff must allege only that the defendant consented to having work done on its premises, we need not separately analyze that claim. In sum, in order to survive a motion to strike the complaint, the plaintiff was not required to allege that the owner had agreed to the terms of the contracts entered into by the general contractor or the subcontractor. Accordingly, it was incorrect for the court to strike the complaint on that ground.

## C

Last, the plaintiff claims that the court incorrectly concluded that the plaintiff was required to allege that the defendant had failed to make payments for the work performed. We agree.

Again, we turn to the language of § 49-33 to resolve the plaintiff's claim. On its face, the statute is silent as to whether the plaintiff must specifically plead that the defendant has failed to make the required payments. The only reference in § 49-33 to the monetary amount of a lien is found in subsections (e) and (f) in which it is stated that a lien may not be placed on property for an amount greater than the total contract price. See also D. Caron, Connecticut Foreclosures (3d Ed. 1997) § 13.04, p. 362 (setting forth essential elements for foreclosure of mechanic's lien, none of which includes allegation of nonpayment on part of owner). Additionally,

---

was consent by the defendant. At that stage in the proceedings, for the purpose of deciding a motion to strike, the court must accept the well pleaded facts as true. See *Johnson* v. *Mazza*, supra, 80 Conn. App. 158.

we note that the model complaint for a mechanic's lien foreclosure action found in West's Practice Book Annotated does not contain an affirmative allegation that the defendant has failed to pay the contractor or subcontractor. See J. M. Kaye, W. Effron & J. L. Kaye, 3A Connecticut Practice Series: Practice Book Annotated (3d Ed. 1996) form S-150, pp. 445–46. Although the foregoing indicates that the plaintiff need not allege the owner's nonpayment in the complaint, the issue of whether good faith payments were, in fact, made to the general contractor can be affirmatively raised by the owner itself in defense of the mechanic's lien foreclosure action.[6] We conclude that although payment by the owner properly may be asserted as a defense to a mechanic's lien foreclosure action, the absence of an allegation of nonpayment in a mechanic's lien foreclosure complaint is not fatal to the vitality of the complaint when confronted by a motion to strike. Accordingly, the court incorrectly struck the complaint for failure to allege that the owner did not pay the contract price.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

---

[6] To the extent that the court concluded that the complaint should have alleged that the defendant failed to make payments to the *plaintiff*, as opposed to the *general contractor*, we note that such an allegation is not required in light of the fact that a subcontractor need not have a direct contractual relationship with the owner in order to pursue the foreclosure of a mechanic's lien. See part II A. In the absence of such a relationship, there would be no contractual obligation on the part of the owner to make any payments directly to a subcontractor. We also note that our Supreme Court has stated that "the determination of whether there remains a lienable fund depends upon the payments made under the contract between *the owner and the general contractor* . . . ." (Emphasis added.) *Seaman* v. *Climate Control Corp.*, supra, 181 Conn. 604.