******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ASTORIA FEDERAL MORTGAGE CORPORATION *v.*
GENESIS LIMITED PARTNERSHIP ET AL.
(AC 37754)

Keller, Mullins and Norcott, Js.

*Argued February 11—officially released July 26, 2016*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Hon. John W. Moran, judge trial
referee.)

*Jane I. Milas*, with whom, on the brief, was *Jaime
Paoletti*, for the appellant (defendant Professional Ser-
vices Group, Inc.).

*Stephen G. Walko*, with whom were *Frank Velardi*
and, on the brief, *Julia E. Braun*, for the appellee (sub-
stitute plaintiff).

*Opinion*

KELLER, J. In this foreclosure action, the defendant Professional Services Group, Inc.,[1] appeals from the trial court's judgment granting the motion filed by the plaintiff, Bellmore Partners, Inc.,[2] to dismiss the defendant's cross claim. The defendant claims that the court erred by granting the plaintiff's motion to dismiss because it improperly concluded that the defendant lacked standing. We agree and accordingly reverse the judgment of the court.

The following procedural history is relevant to this appeal. On October 15, 2009, Astoria Federal Mortgage Corporation (Astoria) filed a four count complaint against Genesis Limited Partnership (Genesis) and the defendant, seeking, inter alia, foreclosure of two mortgages that Genesis had executed and delivered to Astoria for property located at 89 Minerva Street in Derby (Derby property). In the complaint, Astoria alleged that it was in possession of two notes that were secured by two mortgages on the Derby property: (1) a note dated May 14, 2004, wherein Genesis had promised to pay Astoria $210,000; and (2) a note dated June 20, 2005, wherein Genesis had promised to pay Astoria $165,000. Furthermore, Astoria acknowledged that the defendant maintained an encumbrance of record on the Derby property, which it alleged was subordinate in right to the claimed mortgages, "by virtue of a [m]echanic's [l]ien in the original principal amount of [$293,800] dated September 8, 2009, and recorded in volume 589 at page 253 of the Derby land records." On October 23, 2009, Astoria filed a motion for default against the defendant for its failure to appear, which the court denied on October 27, 2009. On December 10, 2009, Astoria filed a demand for disclosure of defense against the defendant.

On December 21, 2009, the defendant filed its disclosure of defense and its answer and special defense. In its disclosure of defense and as a special defense, the defendant asserted that it held a valid mechanic's lien on the Derby property, which was security for construction work on the Derby property that it had commenced on March 12, 2002, and which it alleged was a claim prior in right to the mortgages claimed by Astoria.

On July 19, 2010, Genesis filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut.

During the pendency of Genesis' bankruptcy proceedings, the defendant, on August 13, 2011, assigned its mechanic's lien on the Derby property to Viking Acquisitions, LLC (Viking). On September 30, 2011, this assignment was recorded at volume 633, page 273 of the Derby land records.

On April 12, 2012, the Bankruptcy Court issued an "Order Regarding Limited Relief from the Automatic

Stay," which stated the following: "The court having held a hearing on March 20, 2012, with respect to the motion for relief from stay filed by [the plaintiff] on January 10, 2011 . . . and the motion for immediate order of relief from stay for violation of court ordered stipulations filed by [the plaintiff] on February 13, 2012 . . . the parties having requested limited relief at the hearing to allow the parties to move forward with proceedings in Connecticut Superior Court as to the extent, validity, and priority of the mechanic's lien . . . allegedly held by [the defendant] on [the Derby property]; and the court having determined that cause exists to grant limited relief from stay as requested by the parties, it is hereby

"Ordered that relief from the automatic stay is granted, for cause, pursuant to 11 U.S.C. § 362 (d) (1) to allow the parties to move forward with proceedings in Connecticut Superior Court for the limited purpose of determining the extent, validity and priority of the [defendant's mechanic's lien]; and it is hereby further

"Ordered that relief from the automatic stay is also granted to allow the parties to proceed in Connecticut state court with any appeals from any decision of the Connecticut Superior Court as to the extent, validity, and priority of [the defendant's mechanic's lien] . . . ."[3]

On April 18, 2012, Astoria moved to substitute the plaintiff in the foreclosure proceeding. The court granted Astoria's motion on May 14, 2012.

On September 20, 2012, the court granted the plaintiff's motion for a determination of priorities and ordered the following: "The court finds the priorities to be (1) the first mortgage dated May 14, 2004, and (2) the second mortgage dated June 20, 2006. No further determination is made."[4]

On October 12, 2012, Viking assigned the defendant's mechanic's lien back to the defendant, but this assignment was not recorded in the Derby land records until June 26, 2014.

On March 18, 2014, the bankruptcy court dismissed Genesis' chapter 11 bankruptcy case.

On April 16, 2014, the defendant filed a cross claim against Genesis, in which it sought, inter alia, to foreclose the mechanic's lien that it held on the Derby property. In its cross claim, the defendant alleged that it had "furnished materials and rendered services to Genesis in the construction, raising, removal or repairs to the property owned by Genesis," and that it had "commenced to furnish materials and render services on or about March 12, 2002, and ceased furnishing materials and rendering services on August 20, 2009."

On June 17, 2014, the plaintiff filed a motion to dismiss the defendant's cross claim. In the motion, the

plaintiff asserted that the defendant's cross claim should be dismissed because "[a]t the time the cross claim was filed, [the defendant] was not the holder of the [mechanic's] lien and therefore [did] not have standing to pursue foreclosure." In its memorandum of law in support of the motion, which was also filed on June 17, 2014, the plaintiff argued, inter alia, that the defendant did not have standing to foreclose its mechanic's lien on the Derby property because it had failed to record the October 12, 2012 assignment whereby Viking assigned the mechanic's lien back to the defendant. Therefore, the plaintiff argued, the defendant did not have standing because it was not the record holder of the lien on April 16, 2014, which was the date on which it filed its cross claim seeking foreclosure of the lien.

On July 15, 2014, the defendant filed its opposition to the plaintiff's motion to dismiss, wherein it argued that it did have standing to bring its cross claim against Genesis because the October 12, 2012 assignment was valid despite the defendant's failure to record the assignment prior to its commencement of the foreclosure action. The defendant also asserted that on June 26, 2014, it had recorded the October 12, 2012 assignment in volume 696, page 51 of the Derby land records. The defendant attached a copy of the recorded assignments to its opposition.

On October 14, 2014, the court held a hearing on the plaintiff's motion to dismiss.[5] On January 22, 2015, the court issued a memorandum of decision wherein it granted the plaintiff's motion to dismiss the defendant's cross claim. In its memorandum of decision, the court stated the following: "On April 16, 2014, the defendant . . . filed a cross [claim] against codefendant Genesis . . . seeking to foreclose a mechanic's lien, dated September 8, 2009, against Genesis . . . .

"Prior thereto, [the defendant] assigned its mechanic's lien to Viking . . . on August 13, 2011. On September [30], 2011, at 12:13 p.m., this assignment[6] was recorded at volume 633, page 273, of the Derby land records.

"Subsequently, on October 12, 2012, Viking . . . assigned the same mechanic's lien back to [the defendant]. This second assignment was not recorded until 4:01 p.m. on June [26], 2014, at volume 696, page 51, of the Derby land records.

"[The plaintiff], successor to Astoria . . . by virtue of a valid assignment of a note and mortgage, dated September 29, 2010, challenges the standing of [the defendant] to file the present cross claim. It argues that [the defendant] did not own or possess the mechanic's lien as [the defendant] had assigned its mechanic's lien to Viking . . . and Viking . . . was the owner of record of the mechanic's lien on April 16, 2014. . . .

"Reference to General Statutes § 47-10 (a) provides resolution of the issue of standing here. Section 47-10 (a) provides in relevant part: 'No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. . . .' The failure to record renders an assignee without standing to maintain an action against any party except the grantor and his heirs. . . . This court finds that the assignment of the mechanic's lien, dated October 12, 2012, but not recorded until June 26, 2014, was not effectual against any [party] except Viking . . . and that [the defendant] did not have standing to file the April 16, 2014 cross claim.

"The motion of [the plaintiff] to dismiss the April 16, 2014 cross claim is granted." (Citation omitted; footnote in original.)

On February 11, 2015, the defendant filed a motion to reargue with respect to the plaintiff's motion to dismiss. The court denied the defendant's motion on the same date. This appeal followed.

We address the defendant's claim that the court erred in granting the plaintiff's motion to dismiss because it improperly concluded that the defendant lacked standing as a result of its failure to record, prior to filing its cross claim, the October 12, 2012 assignment of the mechanic's lien. The defendant makes two arguments with respect to this claim: (1) the court erred by improperly interpreting and applying § 47-10 to the unrecorded October 12, 2012 assignment of the mechanic's lien; and (2) the court erred by relying on other nonbinding trial court decisions. We reverse the court's judgment on the basis of the defendant's first argument.[7]

We begin our analysis of this argument by setting forth the appropriate standard of review. "The standard of review for a court's decision on a motion to dismiss . . . is well settled." (Internal quotation marks omitted.) *Manning* v. *Feltman*, 149 Conn. App. 224, 229–30, 91 A.3d 466 (2014). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . .

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction . . . may encounter different situations, depending on the status of the record in the case. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed.

"When a trial court decides a jurisdictional question

raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by *undisputed facts* established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 650–52, 974 A.2d 669 (2009).[8]

On appeal, the defendant argues that the court erred by concluding that it did not have standing to bring its cross claim against Genesis seeking foreclosure of the mechanic's lien that it held because, pursuant to § 47-10, it had not recorded the October 12, 2012 assignment of the lien at the time it filed its cross claim. Specifically, the defendant argues that the court erred in this regard because its conclusion did not harmonize the statutory requirements of § 47-10 with those of General Statutes §§ 49-10,[9] 49-17,[10] and 49-33.[11] In opposition, the plaintiff argues that the court's conclusion was proper because § 47-10 applies to assignments of mechanic's liens, thereby requiring the defendant, as an assignee of such a lien, to record the October 12, 2012 assignment prior to seeking foreclosure of the lien in order to have standing. Because we conclude that noncompliance with the recording requirement of § 47-10 is not fatal to a party's standing to bring an action to foreclose a mechanic's lien, we therefore conclude that the court in the present case erred in its determination that the defendant lacked standing to bring its cross claim by virtue of its failure to record the October 12, 2012 assignment prior to filing its cross claim.

"[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *People's United Bank* v. *Kudej*, 134 Conn. App. 432, 438–39, 39 A.3d 1139 (2012). "In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect . . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . The plaintiff must be within the zone of interests protected by the statute." (Internal quotation marks omitted.) *Connecticut Carpenters Benefit Funds* v. *Burkhard Hotel Partners II, LLC*, 83 Conn. App. 352, 355, 849 A.2d 922 (2004).

The present appeal raises the issue of whether § 47-10, the Connecticut land transfer recordation statute, which generally applies to conveyances of land, applies to an assignment of a mechanic's lien, which is governed by § 49-33. In conducting this inquiry, we must employ relevant statutory construction principles. We note that "[w]hen construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [W]e seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes §] 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of [the] text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Dairyland Ins. Co.* v. *Mitchell*, 320 Conn. 205, 211 n.9, 128 A.3d 931 (2016).

"It is an accepted principle of statutory construction that, if possible, the component parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation. . . . [T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [an appellate court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to

ensure the coherency of our construction. . . . [T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Citation omitted; internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 333–34, 898 A.2d 170 (2006).

Section 47-10 provides in relevant part that "[n]o conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. . . ." Given that the term "conveyance" is not statutorily defined, we may look to the commonly approved meaning of the term. See *O'Dell* v. *Kozee*, 307 Conn. 231, 243–44, 53 A.3d 178 (2012). Our Supreme Court has observed that "[a] conveyance, [i]n its most common usage [is a] transfer of title to land from one person, or class of persons, to another by deed. [*The*] [*t*]*erm may also include assignment, lease, mortgage or encumbrance of land . . . .*" (Emphasis added; internal quotation marks omitted.) *Groton* v. *Mardie Lane Homes, LLC*, 286 Conn. 280, 288–89, 943 A.2d 449 (2008); see also Black's Law Dictionary (9th Ed. 2009). Our Supreme Court and this court also have concluded that a mortgage is considered a conveyance of land within the meaning of the Connecticut recordation statute, § 47-10. See *Farmers & Mechanics Savings Bank* v. *Garofalo*, 219 Conn. 810, 816 n.8, 595 A.2d 341 (1991); *Second National Bank of New Haven* v. *Dyer*, 121 Conn. 263, 267, 184 A. 386 (1936); *Family Financial Services, Inc.* v. *Spencer*, 41 Conn. App. 754, 761, 677 A.2d 479 (1996). Also, "[t]he assignment [of a mortgage] is in effect a conveyance of the land included in the mortgage." *Second National Bank of New Haven* v. *Dyer*, supra, 267. To date, however, no Connecticut appellate court has opined as to whether an assignment of a mechanic's lien is a conveyance of land within the meaning of § 47-10. This is the issue that confronts us in the present appeal.

A mechanic's lien, also called a construction lien in some jurisdictions, "is a statutory lien on buildings and other improvements on realty, and on the realty itself, in favor of contractors, materialmen, and other classes of workers, as a security device to help ensure that those who improve real property receive payment even in the absence of a contractual relationship between the lien claimant and the owner of the property." (Footnotes omitted.) 53 Am. Jur. 2d 88–89, Mechanic's Liens § 1 (2006). The statute that governs mechanic's liens in Connecticut is § 49-33, which provides in relevant part: "If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with

or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim. . . ." See footnote 11 of this opinion.

Section 49-33 "creates a statutory right in derogation of the common law . . . [but] its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials. . . . [A reviewing court's] interpretation, however, may not depart from reasonable compliance with the specific terms of the statute under the guise of a liberal construction. . . . [Moreover] the provisions of [the Connecticut] statute differ sufficiently from the mechanic's lien legislation of other states so that precedents elsewhere are of limited utility in the interpretation of [the Connecticut statute]." (Citations omitted; footnote omitted; internal quotation marks omitted.) *New England Savings Bank* v. *Meadow Lakes Realty Co.*, 243 Conn. 601, 611–12, 706 A.2d 465 (1998). Our Supreme Court has noted that "the important purpose of mechanic's lien statutes [is] to provide an inexpensive and simple method for material suppliers and contractors to secure the value of the services or materials that they have added to the property [which is subject to the mechanic's lien]." *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 573, 620 A.2d 118 (1993). Finally, because a mechanic's lien foreclosure action is an equitable proceeding; *Russo Roofing, Inc.* v. *Rottman*, 86 Conn. App. 767, 776, 863 A.2d 713 (2005); a court, in its equitable powers, must look to substance over form, may consider equitable principles even though they may not have been specifically pleaded, and "may consider all relevant circumstances to ensure that complete justice is done." *McKeever* v. *Fiore*, 78 Conn. App. 783, 788, 829 A.2d 846 (2003).

Against this background, we must decide whether the recording requirements set forth in § 47-10 apply to the assignment of a mechanic's lien. Specifically, we must decide whether an assignee of a mechanic's lien lacks standing to bring an action to foreclose the lien as a result of its failure, prior to bringing the foreclosure action, to record the assignment in the relevant town land records. In conducting this inquiry, we are guided by the statutory interpretation principle that "specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . The

provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (Internal quotation marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 302, 21 A.3d 759 (2011).

Our review of § 49-33, as well as other Connecticut statutes specifically governing mechanic's liens; see General Statutes §§ 49-34 through 49-47a; and relevant case law pertaining to these statutes, reveals no requirement that the assignment of a mechanic's lien be recorded in order to confer standing upon an assignee of the lien to bring an action to foreclose it. With respect to the general issue concerning which parties typically have standing to enforce a mechanic's lien, our Supreme Court, in *Seaman* v. *Climate Control Corp.*, 181 Conn. 592, 595, 436 A.2d 271 (1980), stated the following: "Those who provide services or materials in connection with the construction of a building are entitled to claim a lien on the land that they have improved if they fall into one of two categories. Lienors are protected if they have a claim either (1) by virtue of an agreement with or the consent of the owner of the land, or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials."[12] Neither this court nor our Supreme Court, however, has determined whether principles of assignment and recordation override these fundamental standing requirements for a party to foreclose a mechanic's lien. In order to guide our inquiry in this regard, we seek guidance from certain provisions of the mechanic's lien statute, specifically, subsection (i) of § 49-33, as well as case law pertaining to the foreclosure of mortgages.

Subsection (i) of § 49-33 states that "[a]ny mechanic's lien may be foreclosed in the same manner as a mortgage." Our Supreme Court also has opined that "to the extent the foreclosure of mortgages and mechanic's liens involve similar procedural steps, the law established in mortgage foreclosure actions also applies to mechanic's liens." *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 528, 119 A.3d 541 (2015). As a result, we deem the statutes pertaining to the foreclosure of mortgages, as well as pertinent case law, to be instructive as to our inquiry regarding an assignee's standing to foreclose a mechanic's lien.[13] In this vein, we particularly focus on § 49-17, which governs the foreclosure of a mortgage by the owner of debt without legal title.

On the basis of our reading of the plain language of these statutes, and in accordance with the principle that statutory provisions that focus on more specific topics should prevail over the requirements of statutes that are more general in their coverage; see *Housatonic*

*Railroad Co.* v. *Commissioner of Revenue Services*, supra, 301 Conn. 302; we conclude that the dictates of §§ 49-33 and 49-17 must trump those of § 47-10 because § 47-10 covers the general topic of land conveyances, whereas §§ 49-33 and 49-17 cover the more specific topics of mechanic's liens and mortgage foreclosures, respectively.

Section 49-17, titled "Foreclosure by owner of debt without legal title," provides in relevant part that "[w]hen any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed." "[Section] 49-17 codifies the well established common-law principle that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage. . . . Our legislature, by adopting § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him." (Internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 144 n.9, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016). Thus, pursuant to this statute, a valid assignee of a mortgage note has standing to foreclose irrespective of whether that assignee records the assignment prior to instituting the action. Two leading commentators on Connecticut foreclosure actions have refined the principle codified in § 49-17: "Although it should be clear that the assignee of a mortgage *deed* cannot foreclose without prior compliance with . . . § 49-10 and . . . § 47-10, such is clearly not the situation with the assignee or holder of a mortgage *note*." (Emphasis in original.) 1 D. Caron & G. Milne, Connecticut Foreclosures (5th Ed. 2011) § 5-2:2, p. 163.

We are aware that mechanic's liens are not completely analogous to mortgages insofar as, unlike mortgages, mechanic's liens typically are not separated into a note and a deed. Indeed, our Supreme Court has observed that there are "clear differences" between mortgages and mechanic's liens: "A mechanic's lien, unlike a mortgage, is not an agreement or contract between parties but rather a lien upon real estate which the plaintiff seeks to take by force of law and eventually to foreclose. . . . Unlike a mortgage deed, which may be reformed to reflect the contracting parties' mutual intent, the placement of a mechanic's lien is a unilateral act in which the lienor bears the burden of demonstrating statutory compliance." (Citation omitted; internal quotation marks omitted.) *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, 230 Conn. 807, 821, 646 A.2d 812 (1994). In this same decision, however,

our Supreme Court noted that reliance on mortgage law to assess a particular aspect of the law governing mechanic's liens is appropriate, "particularly when similar guiding policies are in play." Id., 820.[14] In this vein, we think that the principle that the mortgage follows the note, or the debt, can be analogized to mechanic's liens for purposes of foreclosure standing. Specifically, on the basis of our reading of the plain language of §§ 47-10, 49-17, and 49-33 (i), we conclude that the failure of an assignee of a mechanic's lien to record an otherwise valid assignment of the lien does not deprive the assignee of the lien of standing to commence a foreclosure action.

Although our research reveals no Connecticut appellate authority that directly supports the proposition that an assignee of a mechanic's lien need not record an otherwise validly assigned mechanic's lien in order to have standing to foreclose it, our conclusion is bolstered by this court's decision in *Connecticut Carpenters Benefit Funds* v. *Burkhard Hotel Partners II, LLC*, supra, 83 Conn. App. 352. In that case, this court examined the issue of whether a party that had not directly furnished materials or rendered services on a property subject to a mechanic's lien nevertheless had standing to foreclose the mechanic's lien by virtue of the fact that it "[stood] in the shoes" of the employees who had furnished materials and rendered services on the property. Id., 354–55. This court answered this question in the affirmative. Id., 360–61. Although the appeal did not involve the absence of a recordation, let alone the absence of a recordation with respect to an assignment, the case did involve the question of whether a party that appeared to lack statutory standing to foreclose a mechanic's lien nevertheless fell within the protection of the Connecticut mechanic's lien statutes, thereby conferring standing to foreclose a mechanic's lien. Moreover, this court's reasoning in *Connecticut Carpenters Benefits Funds* sheds light on the importance of permitting foreclosure of mechanic's liens in the interest of furnishing laborers with compensation for materials or services that they had provided for the subject property. See id., 358–60.

This court further supported its conclusion that the employee benefits funds had standing to foreclose the mechanic's lien by referring to the reasoning of decisions from appellate courts in other jurisdictions, which had addressed similar standing issues involving mechanic's liens, and which had analyzed statutes that were similar in nature to the Connecticut mechanic's lien statutes insofar as they had to be liberally construed and they protected persons who provided labor or services. Id., 359–60. This court noted the importance of the fact that the parties asserting standing in those cases were found to have standing to enforce mechanic's liens primarily because they fell within the zone of interests to be protected by the statutes, and they were seeking

to enforce the liens for the benefit of the persons who actually had performed the labor that had given rise to the liens. Id., 355, 359–60.

We iterate that the court in the present case was required to consider the allegations in the cross claim in their most favorable light and to indulge every presumption favoring jurisdiction. See *Manning* v. *Feltman*, supra, 149 Conn. App. 229–30. The defendant, in its cross claim, asserted that it commenced providing materials and services to the Derby property on March 12, 2002, and that it ceased such provision on August 20, 2009. The defendant also asserted in its cross claim that a principal balance amounting to $293,800 remained due and owing to it for the services and materials provided, that on September 8, 2009, its president caused a certificate of mechanic's lien in writing to be recorded at volume 589, page 253 of the Derby land records, and that on this same date, it also gave written notice to Genesis communicating its intent to claim a mechanic's lien. In support of its cross claim, the defendant attached an April 16, 2014 notice of lis pendens "claiming a foreclosure of a mechanic's lien from [Genesis] to [the defendant] in the principal amount of [$293,800] plus interest and legal fees, recorded on September 8, 2009 on the Derby [land records] in volume 589, page 253," along with the property description that was filed in the same land records. In support of its motion in opposition to the plaintiff's motion to dismiss, the defendant submitted a July 7, 2014 affidavit wherein the defendant's president, Domenic Paniccia, averred, inter alia: that the defendant had filed a mechanic's lien against the Derby property, dated September 8, 2009, at volume 589, page 253 of the Derby land records; that it had assigned the mechanic's lien to Viking on or about August 13, 2011; and that Viking had assigned the mechanic's lien back to the defendant on October 12, 2012. The defendant also filed a certified copy of the August 13, 2011 assignment of the mechanic's lien, which was recorded in the Derby land records on September 30, 2011, as well as a certified copy of the October 12, 2012 assignment of the mechanic's lien, which was recorded in the Derby land records on June 26, 2014. The court, in its memorandum of decision dismissing the defendant's cross claim, found that the defendant "assigned *its* mechanic's lien to [Viking] on August 13, 2011," and that "on October 12, 2012, [Viking] assigned the same mechanic's lien back to [the defendant]." (Emphasis added.) Finally, Astoria, in its complaint and in its demand for a disclosure of defense from the defendant, acknowledged that "[the defendant] may claim an interest in [the Derby property] by virtue of a [m]echanic's [l]ien in the original principal amount of [$293,800] dated September 8, 2009, and recorded in volume 589 at page 253 of the Derby land records."

The defendant established, by the allegations of its cross claim and proof submitted to the court, that it

had been validly assigned a mechanic's lien for the construction work that it had performed on the Derby property. Thus, the defendant has established that it is entitled to pursue its statutory remedy under § 49-33. In light of the remedial purpose of the mechanic's lien statutes, the requirement that such statutes be construed liberally, and the fact that an action to foreclose a mechanic's lien is equitable in nature, we are not persuaded that the defendant's failure to record the assignment of the lien prior to filing its cross claim deprived it of standing to foreclose the lien.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The named defendant in this action, Genesis Limited Partnership, is not a party to the present appeal. Furthermore, David E. Paniccia was cited in as a defendant but also is not a party to this appeal. Therefore, in this opinion, we refer to Genesis Limited Partnership as Genesis and to Professional Services Group, Inc., as the defendant.

[2] On May 14, 2012, Bellmore Partners, Inc., was substituted as the plaintiff in this foreclosure proceeding. Therefore, in this opinion, we refer to Bellmore Partners, Inc., as the plaintiff and to the original named plaintiff, Astoria Federal Mortgage Corporation, as Astoria.

[3] 11 U.S.C. § 362 (2012), entitled "Automatic stay," provides in relevant part:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5 (a) (3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities of—

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . .

"(4) any act to create, perfect, or enforce any lien against property of the estate;

"(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

"(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . .

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

"(1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ."

[4] We note that this ruling determining priorities is not the subject of the present appeal.

[5] At the hearing, counsel for the plaintiff urged the court to dismiss the defendant's cross claim for lack of subject matter jurisdiction by virtue of the fact that it was not the holder of the mechanic's lien. Plaintiff's counsel further argued that, throughout the foreclosure proceedings and the bankruptcy proceedings that had occurred prior to the date of the hearing, the defendant effectively had represented that it was the holder of the mechanic's lien because it had participated in those proceedings. Plaintiff's counsel nevertheless argued that the defendant lacked standing to foreclose the lien because Viking was the holder of record of the lien at the time that the defendant filed its cross claim. In opposition, counsel for the defendant urged the court not to dismiss its cross claim because it was undisputed that Viking had reassigned the lien to the defendant prior to its filing of the cross claim. Counsel for the defendant also represented to the court that the plaintiff was not prejudiced by the defendant's failure to record the October, 2012 assignment of the mechanic's lien, that the defendant was the lien holder, that it had performed the work subject to the lien, and that

it was the party which had an interest in its foreclosure.

[6] "The court declines any comment regarding the legal sufficiency or validity of the assignments of the mechanic's lien herein—such as, for instance, whether the validating act, General Statutes § 47-36aa, cured any defects—as those are questions for another time."

[7] Because we agree with the defendant's first argument and reverse the court's decision on this ground, we need not address the defendant's other argument. See *Ludgin* v. *McGowan*, 64 Conn. App. 355, 357 n.1, 780 A.2d 198 (2001).

[8] We also exercise plenary review in this appeal because we must interpret and determine the applicability of statutes. See *Dairyland Ins. Co.* v. *Mitchell*, 320 Conn. 205, 210, 128 A.3d 931 (2016) (issue of whether insurance policy exclusion was valid pursuant to meaning and applicability of statute entails plenary review); *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 317–18, 71 A.3d 492 (2013) (question of standing pursuant to statute entails plenary review).

[9] General Statutes § 49-10, entitled "Assignment of mortgage debt. Form of instrument. Requirements. Sufficient notice of assignment. Allocation of recording fees paid by a nominee of a mortgage. Operation of executed assignment," provides in relevant part: "(a) As used in this section, 'mortgage debt' means a debt or other obligation secured by mortgage, assignment of rent or assignment of interest in a lease.

"(b) Whenever any mortgage debt is assigned by an instrument in writing containing a sufficient description to identify the mortgage, assignment of rent or assignment of interest in a lease, given as security for the mortgage debt, and that assignment has been executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgement of deeds of land, the title held by virtue of the mortgage, assignment of rent or assignment of interest in a lease, shall vest in the assignee. . . .

"(i) An assignment executed in accordance with this section shall operate to assign the interest of the assignor in the mortgage which is the subject of the assignment, even if such interest is, in fact, acquired by the assignor after executing such assignment or does not appear of record until after the execution of such assignment. . . ."

[10] General Statutes § 49-17, entitled "Foreclosure by owner of debt without legal title," provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

[11] General Statutes § 49-33, entitled "Mechanic's lien. Precedence. Rights of subcontractors," provides in relevant part: "(a) If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim.

"(b) The claim is a lien on the land, building and appurtenances or lot or in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then on the plot of land and the claim takes precedence over any other encumbrance originating after the commencement of the services, or the furnishing of any such materials, subject to apportionment as provided in section 49-36.

"(c) If any such liens exist in favor of two or more persons for materials furnished or services rendered in connection with the same construction, raising, removal or repairs of any building or any of its appurtenances, or in the improvement of any lot, or in the site development or subdivision of any plot of land, no one of those persons shall have any priority over another

except as hereinafter provided. . . .

"(i) Any mechanic's lien may be foreclosed in the same manner as a mortgage."

[12] In *Seaman* v. *Climate Control Corp.*, supra, 181 Conn. 595–96, our Supreme Court observed that "[l]ienors in the second category must give timely notice of their intent to claim a lien in order to perfect their lien, while those in the first category need not give such notice. General Statutes § 49-35. Lienors in the second category include subcontractors and persons who furnish materials or services by virtue of a contract with the original contractor or with any subcontractor, that is to say at least first and second tier subcontractors. General Statutes § 49-35."

[13] Although we find these statutes to be instructive, they are not controlling for purposes of our analysis. With respect to pertinent case law concerning foreclosure of mortgages, we acknowledge that the plaintiff argues that *Family Financial Services*, *Inc.* v. *Spencer*, supra, 41 Conn. App. 754, is controlling precedent. We disagree. In that case, this court held, inter alia, that a mortgage assignment and power of attorney needed to be recorded on the land records in order to be effective against a mortgagor. Id., 760–62. We note, however, that our Supreme Court's decision in *RMS Residential Properties*, *LLC* v. *Miller*, 303 Conn. 224, 32 A.3d 307 (2011), overruled in part on other grounds by *J.E. Robert Co.* v. *Signature Properties*, *LLC*, 309 Conn. 307, 325 n.18, 71 A.3d 492 (2013), essentially superseded this court's holding in *Family Financial Services*, *Inc.*, as it pertained to whether the failure to record rendered an assignment ineffective. Our Supreme Court, in *RMS Residential Properties*, *LLC*, concluded that, pursuant to § 49-17, the rightful owner of a mortgage note has a right to foreclose the mortgage regardless of whether the mortgage had been assigned to him. See *RMS Residential Properties*, *LLC* v. *Miller*, supra, 230; see also *Equity One*, *Inc.* v. *Shivers*, 310 Conn. 119, 126–27, 74 A.3d 1225 (2013) (acknowledging statutory right to foreclose set forth in § 49-17 and further noting that standing to enforce note is established by provisions of Uniform Commercial Code); *Countrywide Home Loans Servicing*, *LP* v. *Creed*, 145 Conn. App. 38, 49–53, 75 A.3d 38 (concluding that plaintiff had standing to foreclose mortgage note and agreeing with plaintiff that defendant did not produce evidence that recording error as to assignment rebutted presumption that plaintiff had standing to foreclose by virtue of possessing note), cert. denied, 310 Conn. 936, 79 A.3d 889 (2013). The statutory right set forth in § 49-17 overrides any recording requirement for purposes of standing to foreclose a mortgage, and, therefore, the plaintiff's argument that *Family Financial Services*, *Inc.* v. *Spencer*, supra, 760–62, should control is misplaced.

[14] In *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, supra, 230 Conn. 807, our Supreme Court analyzed the issue of whether a mechanic's lien was invalid as against a subsequently and properly recorded mortgage that had been executed on the same property, due to the fact that the mechanic's lien certificate that was recorded in the town clerk's office omitted an attached description of the property subject to the lien. Id., 808. Our Supreme Court held that the mechanic's lien was valid despite a recording error. Most notably, in its decision, the court discussed the policy of Connecticut courts to construe the mechanic's lien statutes liberally in order to achieve the remedial purpose of the statutes, and it observed that "our courts have been liberal in validating liens despite claimed errors on the face of the lien certificate where the mistake was made in good faith and no resulting prejudice was claimed." (Internal quotation marks omitted.) Id., 815–16. Moreover, the court analogized the error at issue with mortgage recordation errors: "In the context of mortgages, we have recognized that [m]any errors in recording . . . are so neutralized by other matters which do appear in the record, that no searcher after the title possibly could be misled. . . . [S]uch shortcomings should not affect the validity of the record as notification." (Internal quotation marks omitted.) Id., 819.